929 P.2d 1303

**Christopher Ray PEREZ, a Minor By and Through His Natural Mother, Sandra PEREZ; and Manuel Ray Hernandez, Plaintiffs/Appellants,**

v.

**COMMUNITY HOSPITAL OF CHANDLER, INC., an Arizona Corporation, dba Chandler Regional Hospital, Defendant/Appellee.**

No. CV–95–0522–PR.

Supreme Court of Arizona,
En Banc.

Jan. 16, 1997.

Roush, McCracken & Guerrero by Charles D. Roush and Peter A. Guerrero and Ortega and Moreno, P.C. by Daniel R. Ortega, Phoenix, for Plaintiffs/Appellants.

Jones, Skelton & Hochuli by William R. Jones, Jr., Lori A. Shipley, David C. Lewis, Phoenix, for Defendant/Appellee.

### OPINION

FELDMAN, Justice.

Sandra Perez and Manuel Ray Hernandez, and their son, Christopher Ray Perez (collectively Plaintiffs), sought review of a court of appeals' decision holding that there is no conclusive presumption of prejudice for improper and unrecorded contacts between a bailiff and a jury. We granted review to determine whether Arizona recognizes a rule of presumed prejudice in cases of improper, ex parte communication between a bailiff and deliberating jurors. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), Ariz. R.Civ.App.P. 23, and A.R.S. § 12–120.24.

### FACTS AND PROCEDURAL HISTORY

In this medical malpractice case, the parties stipulated to damages of $2.4 million and tried only the issue of liability against Defendant Community Hospital of Chandler. At the close of a five-day trial and two days of deliberations, the jury returned a unanimous verdict for Plaintiff, finding the Defendant only one percent at fault. The jury additionally found Dr. Bruce Eich, a non-party at fault [1] who had previously settled with Plaintiffs, ninety-nine percent at fault. Shortly

---

1. A.R.S. § 12–2506, Joint and several liability abolished; exceptions; apportionment of degrees of fault; definitions, states, in pertinent · part:

after the verdict, Plaintiffs' counsel discovered that the bailiff temporarily assigned to the trial judge had unauthorized, ex parte communications with the jurors during their deliberations, without the knowledge of court or counsel.[2] Counsel moved at once for an order declaring a mistrial. Counsel later learned that there had been a total of three improper contacts between the bailiff and jury.

The first contact occurred when the jury called the bailiff into the jury room and asked whether certain portions of trial testimony or depositions admitted in evidence could be read to them or whether they could have a copy of the transcript to read and review. Without contacting the judge, the bailiff told the jurors that it was not possible for them to rehear testimony and that they had everything they needed to make a decision.

The second contact was a question regarding the procedure at impasse. The jurors were deadlocked at four-to-four and inquired what would happen if they were unable to reach a decision. Again, without advising the judge, the bailiff told the jurors that if they reported deadlock, the judge would speak to them about the problem and then send them back to deliberate until a verdict was reached. Despite reassurance from the bailiff, some of the jurors were concerned

they would be reprimanded by the judge for not being able to reach a verdict.

The third contact occurred when the jury asked the bailiff whether signing the defense verdict form would allow Dr. Eich to escape responsibility. In response, the bailiff told the jury that obtaining an answer to such a question would be time-consuming because it would have to be presented to the judge and the attorneys, so the jury should be certain they wanted to ask the question.

■ At the time Plaintiffs' motion for mistrial was argued and denied by the trial judge on June 28, 1994, the details of two of these communications were not fully known. After the mistrial motion was denied and judgment was entered, Plaintiffs filed a motion for new trial under Rule 59(a)(1) and (6), Ariz.R.Civ.P., supported by the affidavits (reproduced in the appendix) secured on July 21 and 25, 1994, from four of the eight jurors. The judge conducted an evidentiary hearing on October 11, 1994, four and one-half months after the verdict was delivered. The judge limited the evidentiary hearing solely to matters concerning the first communication when the jury requested deposition or trial testimony. The record does not reveal, nor did the judge explain, why the hearing was so limited.[3] Six of the eight trial jurors

---

B. In assessing percentages of fault the trier of fact shall consider the fault of all persons who contributed to the alleged injury ... regardless of whether the person was, or could have been, named as a party to the suit. Negligence or fault of a nonparty may be considered if the plaintiff entered into a settlement agreement with the nonparty or if the defending party gives notice before trial ... that a nonparty was wholly or partially at fault. Assessments of percentages of fault for nonparties are used only as a vehicle for accurately determining the fault of the named parties. Assessment of fault against nonparties does not subject any nonparty to liability in this or any other action, and it may not be introduced as evidence of liability in any action.

C. The relative degree of fault of the claimant, and the relative degrees of fault of all defendants and nonparties, shall be deter-

mined and apportioned as a whole at one time by the trier of fact.

2. Plaintiffs eventually presented the court with four affidavits in support of their motion for new trial from Jurors Cabrera, Jones, Villa, and Campbell. The affidavits were virtually identical. *See* Appendix A. Absent affidavits or evidence to the contrary, we must accept the facts in these affidavits as true.

3. During the evidentiary hearing, Plaintiffs' lawyer attempted to question a juror concerning the other communications, but the judge rejected such an inquiry.

"Whether the trial court abused its discretion in limiting the scope of the hearing depends upon the purpose of the hearing." *Brooks v. Zahn*, 170 Ariz. 545, 553, 826 P.2d 1171, 1179 (App.1991). The purpose of the evidentiary hearing in this case was presumably to deter-

testified regarding the first communication. Five jurors testified that during deliberations they asked the bailiff whether they could reread or rehear the trial or deposition testimony of several different doctors and a nurse. One of the six jurors, however, had absolutely no recollection of the events.

In denying Plaintiffs' motion for new trial, the judge stated:

> After hearing six of the eight trial jurors, the Court concludes that plaintiffs' Motion For A New Trial must be denied.

> The Court has no doubt that the bailiff erred when she answered the jurors' question (without consulting the Court) about the rereading of deposition testimony and the reading of trial testimony by telling them that they had to consider only what was before them. But, the Court does not find any prejudice has resulted from that answer.

> The Court does not find this conclusion inconsistent with the holding in *Perkins v. Komarnyckyj*, 172 Ariz. 115, 834 P.2d 1260 (1992) in which the Arizona Supreme Court dealt with a trial judge's refusal to allow certain jurors to deliberate on the issue of damages.

The court of appeals affirmed the denial of Plaintiffs' motion for new trial, holding that there is no conclusive presumption of prejudice from improper communications to a jury and that Plaintiffs had not established any substantive error or deprivation of a fundamental right resulting from the communications between the bailiff and the jury. *Perez v. Community Hospital of Chandler*, No. 2 CA–CV 95–0174, filed October 12, 1995 (Memorandum Decision), at 8. The court of appeals concluded that, "[a]lthough the bailiff's conduct here clearly was improper, no prejudice to plaintiffs has ever been suggested, let alone established." *Id.* at 7.

## DISCUSSION

■ The fairness of trial by jury derives in substantial part from the prohibition of ex parte communication to the jury of information regarding evidence and legal standards. *Perkins v. Komarnyckyj*, 172 Ariz. 115, 117, 834 P.2d 1260, 1262 (1992). In this case, the bailiff made three separate ex parte communications, and although Plaintiffs ask us to adopt a strict rule of presumed prejudice in cases involving such communications, we decline to do so. Instead, both common sense and existing Arizona case law persuade us to examine each situation on a case-by-case basis, applying a two-prong inquiry: (1) Was there an improper communication? and (2) Was the communication prejudicial or merely harmless?

In making this inquiry, factors that should be taken into consideration are: (1) whether the communication was improper or simply involved an "administrative detail," (2) whether the communication, despite its impropriety, concerned an innocuous matter, (3) whether the substantive response accurately answered the question posed, (4) whether an essential right was violated, and (5) whether the nature of the communication prevents ascertainment of prejudice. *See Perkins*, 172 Ariz. 115, 834 P.2d 1260.

We turn, therefore, to consider these factors.

### A. The Communications Were Improper, Not Innocuous and Inaccurate

■ There is no dispute that the bailiff's actions in this case were improper. The jurors' affidavits were not controverted. During an in-chambers meeting with the judge, the bailiff admitted she had a conversation with the jurors that went beyond mere "administrative details" and in fact included a

---

mine if the improper communications caused any prejudice to the Plaintiffs. Therefore, we do not believe the judge could have properly limited the scope of the hearing to only one of the three communications and still have the ability to determine the issue of prejudice to Plaintiffs. We believe, instead, that the four affidavits, the ju-

rors' testimony at the evidentiary hearing, and the nature of the communications all rather conclusively establish improper conduct and a clear danger of prejudice in this case. Thus, the judge abused his discretion in limiting the evidentiary hearing. *See Dunn v. Maras*, 182 Ariz. 412, 897 P.2d 714 (App.1995).

significant procedural question regarding what would happen if the jury could not reach a decision. Instead of relaying the jurors' questions to the trial judge, the bailiff answered the jurors' questions, violating Rule 39(e) and (g), Ariz.R.Civ.P.[4]

The bailiff misled the jury about the process in the event of a deadlock, at the least failing to inform them that questions could and should be addressed to the judge and that any impasse problem should be presented to the judge. It was also improper for the bailiff to advise the jury of what would happen if an impasse were reported. *See* Rule 39(e) and (g), Ariz.R.Civ.P. Because the jurors' problem was not presented to the court, the court could not respond to or address the deadlock issue, and the attorneys were denied an opportunity to assist the deadlocked jurors during this crucial step in the trial process.[5]

Likewise, the bailiff acted improperly in denying the jurors' request to read important portions of trial or deposition testimony, and in answering their inquiry concerning the verdict forms. The request and questions were certainly significant, and the bailiff's responses were inaccurate. The jurors might indeed have been allowed to rehear or read some of the testimony, and if the court or counsel were allowed to interject, some of the confusion surrounding the verdict forms might have been alleviated.

A long line of Arizona cases holds that a judge errs by responding to significant juror inquiries without consulting the parties. *See, e.g., State v. Rich,* 184 Ariz. 179, 180, 907 P.2d 1382, 1383 (1995); *Perkins,* 172 Ariz. 115, 834 P.2d 1260. We acknowledge, of course, that the impropriety in this case was attributable to the bailiff, not the judge, but do not believe the distinction is important in this type of situation.[6] The issue here is the effect of the improper communications, not *who* made the communications.

■ Moreover, as Plaintiffs suggest, there is far more potential for improper advice from a bailiff than from a judge on substantive legal and important procedural matters.[7] Thus, we do not believe a finding of error is

4. Rule 39, Ariz.R.Civ.P., states in pertinent part:
   (e) Duty of Officer in Charge of Jury. The officer having the jurors under that officer's charge *shall not allow any communication* to be made to them, *or make any,* except to ask them if they have agreed upon their verdict, unless by order of the court, and shall not, before the verdict is rendered, communicate to any person the state of their deliberations or the verdict agreed upon.
   (g) Communication to Court by Jury. When the jurors desire to communicate with the court during retirement, they shall make their desire known to the officer having them in charge who shall inform the court and they may be brought into court, and through their foreman shall state to the court, either orally or in writing, what they desire to communicate.
   (Emphasis added.)

5. Rule 39(h) now states:
   Assisting Jurors at Impasse. If the jury advises the court that it has reached an impasse in its deliberations, the court may, in the presence of counsel, inquire of the jurors to determine whether and how court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the judge may direct that further proceedings occur as appropriate.

This subdivision of Rule 39 was promulgated on October 24, 1995, and effective on December 1, 1995, well after the date of trial in this case.

6. *See also State v. Koch,* 138 Ariz. 99, 673 P.2d 297 (1983); *State v. McDaniel,* 136 Ariz. 188, 665 P.2d 70 (1983), *cert. denied,* 499 U.S. 952, 111 S.Ct. 1426, 113 L.Ed.2d 478 (1991); *State v. Mata,* 125 Ariz. 233, 609 P.2d 48, *cert. denied,* 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980); *State v. Robin,* 112 Ariz. 467, 543 P.2d 779 (1975); *State v. Werring,* 111 Ariz. 68, 523 P.2d 499 (1974); *State v. Burnetts,* 80 Ariz. 208, 295 P.2d 377 (1956).

7. Bailiffs can exert significant influence over jurors because they are typically the jurors' only "link" to the world beyond the jury room. Further, because a bailiff could be viewed as less of an authority figure, the jurors might feel more comfortable asking a bailiff a question they would feel reluctant to pose to a judge. Moreover, jurors might be tempted to give a response by a bailiff some weight because of the bailiff's familiarity with legal issues and procedures. *See* 51 A.L.R.5th 572, § 2 (1995). Although there are statutes designed to prohibit such communications, communications regularly take place, as evidenced by the many cases in this area, and the three communications in this case. *See generally* 58 Am Jur.2d *Trial* §§ 1568–72.

**360**

negated simply because it was the bailiff and not the judge who improperly communicated with the jury without consulting the parties.

The bailiff's job is to serve as a conduit of questions and information between the jury and judge, and not to act as a "filter" of information or a source of wisdom or advice. *See* Rules 39(e) and (g). Thus, we conclude, as did the court of appeals, that the bailiff's conduct in all three incidents was significantly improper.

## B. Prejudice

■ We have stated that "a communication between judge and jury outside the presence of defendant and counsel [may be] harmless error." *Rich*, 184 Ariz. at 180, 907 P.2d at 1383. We believe this principle is equally applicable to improper communications between bailiff and jury. The articulation of the principle has not, however, been entirely uniform.

### 1. *Mitchell*—the "affirmatively probable" standard

A review of Arizona case law provides us with a single case involving a bailiff's improper communication with the jury during its deliberations in a civil matter. In *Southern Pac. R.R. Co. v. Mitchell*, 80 Ariz. 50, 292 P.2d 827 (1956), the jury became confused about which count was which, and requested the bailiff get them the answer to the question. Unable to contact the trial judge, the bailiff and the court reporter went into the jury room and the reporter read only that part of her shorthand notes in which the judge had instructed the jury as to forms of verdict. This was done without authorization of the court or knowledge and consent of the parties. We held the misconduct was not reversible error. Rather than establishing a "presumed prejudice" rule in cases of im-

proper bailiff-jury communication in civil cases, we required an "affirmatively probable" showing of prejudice before a trial court's discretionary denial of a motion for new trial would be overturned. *Id.* at 65, 292 P.2d at 837.[8]

*Mitchell* enunciates a standard inapplicable to the present case. In *Mitchell*, the bailiff and reporter did no more than reread the court's instructions to the jury. In any event, the language of *Mitchell* has, we believe, been modified by later cases.

### 2. *Perkins*—proof of prejudice

■ In *Perkins*, we recognized the difficulty of proving prejudice in some cases when we stated,

> we cannot require a litigant to show the extent of prejudice resulting from an error when, as a practical matter, the nature of the error renders it impossible to prove the extent of any prejudice.

172 Ariz. at 119, 834 P.2d at 1264. Thus, although we do not recognize a presumed prejudice rule with respect to every improper communication with the jury, neither do we require a litigant to assume an impossible burden. *Id.; Rich*, 184 Ariz. at 181, 907 P.2d at 1384; *see also Hernandez v. Virgin*, 505 So.2d 1369, 1370 (Fla.App.1987) ("Although an ex parte communication between a judge and a deliberating jury is not per se reversible error in a civil case, reversal is required where ... owing to the nature of the ex parte communication, the reviewing court is unable to determine whether the action was actually harmless."). *See generally* 75B Am. Jur.2d *Trial* §§ 1576 & 1578 (1992) (Manner of responding to jury inquiry or request: "Without this process, preserved for the record, it is impossible to determine whether prejudice has occurred during one of the most sensitive stages of the trial.").[9]

---

8. This court stated, "we cannot say as a matter of law that prejudice seems so affirmatively probable as to constitute an abuse of discretion for the trial court to have denied defendants' motion for new trial, though we in no wise condone the

misconduct of the court officials leading to the infraction." *Id.*

9. *See Smith v. Shankman*, 208 Cal.App.2d 177, 25 Cal.Rptr. 195 (1962) (bailiff's denying jurors a requested transcript constituted error); *Blender*

In *Perkins*, the judge, without consulting counsel, told the jury that only those jurors who agreed ,on liability could deliberate to decide damages. 172 Ariz. at 116, 834 P.2d at 1261. Noting that the judge's ex parte communication was improper, significant, and substantively incorrect, we held the judge's error was "inherently prejudicial" and no further showing was needed to require reversal. *Id.* at 119, 834 P.2d at 1264. We reached that conclusion because the nature of the error—incorrectly instructing some jurors not to participate—made it impossible to determine the extent of the prejudice. *Id.* We could not speculate what result would have been reached had all the jurors participated in setting the amount of damages. *Id.*

### 3. *Rich*

Likewise, in *Rich*, we held that the trial court's failure to inform the parties of an inconsistent verdict was not harmless. When a trial judge withholds information from the parties, the judge creates problems similar to those "created when there are ex parte communications between a judge and the jury." 184 Ariz. at 180, 907 P.2d at 1383.

Although in the present case, unlike *Rich*, the failure to disclose was attributable to the bailiff rather than the judge, the result is the same: the parties did not receive information to which they were entitled. Thus, there were two errors: first, the improper communications between the bailiff and the jury; and second, the bailiff's failure to relay the jurors' questions to the trial judge, depriving the parties of information to which they were entitled. Quoting *Perkins*, and acknowl-

edging that harmless error inquiry was appropriate, the *Rich* court said that even questions of "arguable substance or significance ... must be communicated to counsel before any decision not to respond is made." *Id.* at 181, 907 P.2d at 1384. Again, because we "simply [could] not know what the jury would have done," we were "not prepared to say the error was harmless." *Id.*

### 4. Prejudice because of deprivation of an essential right

Although neither *Perkins* nor *Rich* presumes prejudice for any and all communications, they do not require the litigant to demonstrate prejudicial effect when the nature of the error makes it impossible to ascertain the degree of prejudice resulting from the substance of a communication. Thus, prejudice can be "conclusively presumed" when the nature of the error deprives the court of the ability to determine the extent of prejudice. *See Perkins*, 172 Ariz. at 119, 834 P.2d at 1264. In such cases, the litigant has been denied several essential rights: first, to have a jury free from unauthorized intrusion; second, to have a jury protected from extraneous and inaccurate information; and finally, the right to be notified about problems with jury deliberations and to be heard with respect to the method of addressing those problems. In the present case, for instance, counsel might well have been able to stipulate to the reading of portions of the reporter's notes. We will never know and refuse to speculate what might have happened after two days of delib-

---

*v. Malecki*, 606 So.2d 498 (Fla.App.1992) (granting of new trial not an abuse of discretion where, during deliberations, the bailiff, without informing the trial court or counsel, told jurors they could not have requested depositions); *Hinman v. Morrison–Knudsen Co.*, 115 Idaho 869, 771 P.2d 533 (1989) (new trial properly granted where the bailiff, acting without authority from the trial judge, denied jury requests for deposition transcripts); *Wittmeier v. Post*, 78 S.D. 520, 105 N.W.2d 65 (1960) (bailiff's refusal of jurors' request to hear defendant's testimony was reversible error as an unauthorized assumption of power); *Logan v. Grady*, 482 S.W.2d 313 (Tex.Civ. App.1972) (prejudicial error where bailiff in

charge of jury engaged in improper conduct by not allowing jury to request the trial court to hear the testimony of a witness); *Blake v. Spartanburg General Hospital*, 307 S.C. 14, 413 S.E.2d 816 (1992) (no abuse of discretion in granting plaintiff a new trial on the ground that bailiff's comments concerning deadlocks during deliberations might have influenced jury); and *Henrichs v. Todd*, 245 Mont. 286, 800 P.2d 710 (1990) (statements by bailiff to the jury that to answer a question would take about as long as it takes "for hell to freeze over" violated plaintiff's substantial rights and denied plaintiff's right to a fair trial).

erations in a hard-fought, close case if proper jury procedures had been followed. The right to a jury trial is hollow if a court officer acts without notice to the litigants and becomes a barrier to transmittal of information from the jury and a source of misinformation or coercion to jurors.

## CONCLUSION

The bailiff in this case made three communications that were not only improper, but also substantively incorrect. Here, as in *Perkins* and *Rich,* the litigants were not given notice of the problems, the nature of the error prevents the parties from demonstrating the degree of the resulting prejudice, and the improper communications and misinformation given to the jury involved important procedural and substantive issues. Thus, *Perkins* and *Rich* require this court to find that the errors were prejudicial.

The court of appeals' decision is vacated, the judgment is reversed, and the case is remanded to the superior court with instructions to grant a new trial.

ZLAKET, C.J., JONES, Vice C.J., and MOELLER and MARTONE, JJ., concur.

## APPENDIX A

(Juror), being first duly sworn upon (his, her) oath, deposes and says as follows:

1. That I was one of the sworn jurors who deliberated and decided the case entitled *Christopher Ray Perez, et al. v. Chandler Regional Hospital,* Maricopa County civil action number CV–92–21492 and CV–93–07433 (consolidated);

2. That our deliberations took place over a two day period on May 23, 1994 and May 24, 1994;

3. During our deliberations, there were three separate instances when we posed questions to the bailiff about our deliberations and/or the procedures we were to use in our deliberations. The first instance involved our request to the bailiff inquiring if it was possible for us to rehear some deposition testimony. We were told by the bailiff that we must decide the case on the evidence before us and that it was not possible for us to rehear testimony;

4. The second contact the jury had with the bailiff was to ask her what happened if we were deadlocked, *because we were then deadlocked four to four.* She told us the judge would call the lawyers back to the courtroom and then we would be told to continue to deliberate until we reached a verdict. We were all concerned that we might be reprimanded by the Judge for not being able to reach a verdict; and

5. The third question we asked the bailiff concerned the form of the verdict which found for the defendants. *We wanted to know* if our signing that form would allow Dr. Eich to escape responsibility. The bailiff told us it would take time to ask that question to the judge because he needed to get the attorneys back in the courtroom. She said because of that, we should be sure we wanted to ask that question.

(Emphasis added.)