334 P.3d 199

**AMERICAN POWER PRODUCTS, INC., a California corporation; LFMG/APP, LLC, an Arizona corporation, Plaintiffs/Counterdefendants/Appellants/Cross–Appellees,**

v.

**CSK AUTO, INC., an Arizona corporation, Defendant/Counterclaimant/Appellee/Cross–Appellant.**

No. 1 CA–CV 12–0855.

Court of Appeals of Arizona, Division 1.

Aug. 5, 2014.

Hymson Goldstein & Pantiliat, PLLC By David B. Goldstein, Scottsdale, Co–Counsel for Plaintiffs/Counterdefendants/Appellants/Cross–Appellees.

Dodell Law Corporation By Herbert Dodell, Woodland Hills, CA, Co–Counsel for Plaintiffs/Counterdefendants/Appellants/Cross–Appellees.

Polsinelli PC By Leon B. Silver, Nathan J. Kunz, Andrew S. Jacob, Phoenix, Counsel for Defendant/Counterclaimant/Appellee/Cross–Appellant.

Presiding Judge PATRICIA K. NORRIS delivered the opinion of the Court, in which Judge SAMUEL A. THUMMA joined. Judge KENT E. CATTANI dissented.

## OPINION

NORRIS, Judge:

¶ 1 The dispositive issue in this appeal is whether the superior court should have denied Appellant American Power Products, Inc.'s motion for a new trial without first holding an evidentiary hearing to determine whether an ex parte communication between the bailiff and the jury was improper and prejudicial. Because the court did not have the necessary facts to decide the effect of the communication on the jury, it should not have ruled on American's motion without first holding such a hearing. Accordingly, we remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In 2003, American and CSK Auto, Inc. entered into a contract under which American agreed to sell electric scooters and other items to CSK on an open account. In December 2005, American sued CSK for, *inter alia,* breach of contract and negligent misrepresentation. American sought more than $5,000,000 in damages. CSK answered, asserted various affirmative defenses and counterclaims, and sought, *inter alia,* damages in excess of $950,000. During trial, the parties made a number of concessions regarding the status of the open account and stipulated that the "starting point" for the jury's computation of damages would be $10,733 in favor of American.

¶ 3 During 12 trial days over three weeks, the parties introduced 164 exhibits into evidence (one of which was 4,000 pages long) and 24 witnesses testified. Trial scheduling was apparently an issue. During voir dire and again midway through trial, the superior court informed the jury the trial would be completed "October 6th, perhaps the 10th." On the seventh day of trial, a juror asked the court, "By taking off Thursday Sept. 29th— will this cause the trial to run past the original completion date?" In response, the court advised the jury it had "[told] counsel they need to get this case in on time.... The 6th is a Thursday and we [will] let you deliberate on Friday." The court instructed the jury on Friday morning starting at 10:25 a.m. Counsel then presented closing arguments, working through the noon hour and recessing for lunch at 1:43 p.m. After apparently deliberating between one and two hours on a Friday afternoon before a three-day weekend, the jury returned a 6–2 verdict at 4:13 p.m. in favor of American. The jury awarded American $10,733.

¶ 4 After the verdict, American hired a private investigator to interview several jurors. The investigator spoke with at least three of the jurors and obtained affidavits from two. As relevant here, Juror H.T.'s affidavit stated that "[at] one point the bailiff ... came into the room. Someone asked her

how long deliberations typically lasted. She told us an hour or two should be plenty." Both affidavits stated that the deliberations were not fair, most of the jurors refused to consider the evidence and just wanted to go home, and other jurors felt pressured to go along.

¶5 American moved for a new trial. Relying in part on the affidavits, it argued that at a minimum it was entitled to an evidentiary hearing for "further inquiry [into] whether deliberations were improperly curtailed [by] ... the bailiff's statement that one or two hours of deliberations were enough." CSK did not dispute the bailiff had communicated with the jury or the content of the communication as reported in H.T.'s affidavit. After briefing and oral argument, the court denied the motion without holding an evidentiary hearing.

## DISCUSSION

¶6 On appeal, American argues the superior court abused its discretion in denying its motion for a new trial without first holding an evidentiary hearing. For the following reasons, we agree.

### I.   Consideration of the Juror Affidavits

¶7 As a preliminary matter, we must determine whether and to what extent the superior court was entitled to consider the juror affidavits. *See Kirby v. Rosell*, 133 Ariz. 42, 46–47, 648 P.2d 1048, 1052–53 (App. 1982); *Haley v. Blue Ridge Transfer Co.*, 802 F.2d 1532, 1536 (4th Cir.1986). Arizona Rule of Evidence 606(b)(1)[1] bars a juror, during an inquiry into the validity of a civil verdict, from testifying about "any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." As relevant here, however, a juror may testify about whether "extraneous prejudicial information was improperly brought to the jury's attention." Ariz. R. Evid. 606(b)(2)(A).

¶8 Under Rule 606(b)(2)(A), the portion of H.T.'s affidavit describing the bailiff communication was admissible because it concerned extraneous information that could have prejudiced the jury. *See Perez ex rel. Perez v. Cmty. Hosp. of Chandler, Inc.*, 187 Ariz. 355, 356, 929 P.2d 1303, 1304 (1997) (superior court considered juror affidavits detailing communication with bailiff); *accord State v. Pearson*, 98 Ariz. 133, 136, 402 P.2d 557, 559–60 (1965) (under common law of evidence, juror affidavits could be considered to show "misconduct of a party or a court officer" (citations omitted)). But, as CSK argues, neither H.T. nor the other jurors could testify about discussions between the jurors during deliberations, the effect of those discussions on other jurors, and the jurors' mental processes. Thus, those portions of the affidavits were inadmissible under Rule 606(b). When a juror affidavit contains both admissible and inadmissible statements, a court may properly consider only those portions that are admissible under the exceptions set forth in Rule 606(b)(2). *See Kirby*, 133 Ariz. at 46, 648 P.2d at 1052. Accordingly, the only juror statement the superior court could properly consider—and that we may consider on appeal—is H.T.'s statement regarding the bailiff communication.

### II.   Bailiff Communication

¶9 In *Perez*, the Arizona Supreme Court discussed the proper test a court should apply when determining whether a bailiff's ex parte communications with the jury warrant a new trial. Rejecting "a strict rule of presumed prejudice in cases involving such communications," the court recognized that each situation should be examined on a case-by-case basis, using a two-prong inquiry asking, first, whether there was an improper communication and, second, whether the communication was prejudicial. 187 Ariz. at 356, 929 P.2d at 1304. To address these questions, the supreme court identified several factors a court should consider, including "(1) whether the communication was improper or simply involved an 'administrative detail,' (2) whether the communication, despite its improprie-

---

**1.** Although Arizona Rule of Evidence 606(b) was amended in 2012, those revisions were intended to be stylistic only. Accordingly, we cite the current version of the rule.

ty, concerned an innocuous matter, (3) whether the substantive response accurately answered the question posed, (4) whether an essential right was violated, and (5) whether the nature of the communication prevents ascertainment of prejudice." *Id.* (citing *Perkins v. Komarnyckyj*, 172 Ariz. 115, 834 P.2d 1260 (1992)).

¶ 10 A superior court may, in the exercise of its discretion, hold an evidentiary hearing to determine whether the bailiff engaged in a prejudicial ex parte communication with the jury before ruling on a new trial motion raising this issue. *Cf. Brooks v. Zahn*, 170 Ariz. 545, 552–53, 826 P.2d 1171, 1178–79 (App.1991) ("[T]he trial court may, in the exercise of its discretion, conduct an evidentiary hearing to determine whether the jury considered extraneous prejudicial information during deliberations." (citing *Kirby*, 133 Ariz. at 46, 648 P.2d at 1052; *Foster v. Camelback Mgmt. Co.*, 132 Ariz. 462, 463–64, 646 P.2d 893, 894–95 (App. 1982))). A court, however, will abuse its discretion in denying such a motion without first holding an evidentiary hearing when it does not have the facts necessary for it to determine whether a bailiff's communication with the jury was improper and prejudicial. *See Perez*, 187 Ariz. at 357 n. 3, 929 P.2d at 1305 n. 3 (superior court abused discretion in limiting evidentiary hearing to exclude facts necessary to determining prejudice); *State v. Miller*, 178 Ariz. 555, 557, 875 P.2d 788, 790 (1994) (superior court abused discretion by refusing to conduct evidentiary hearing after learning one juror received note from alternate regarding alternate's belief about defendant's guilt). As we discuss in more detail below, to obtain these facts a court should determine and then evaluate the circumstances surrounding the communication, including what was said, how it was said, and when it occurred. *See infra* ¶¶ 20–21; *Kilgore v. Fuji Heavy Indus. Ltd.*, 148 N.M. 561, 240 P.3d 648 (2010).

¶ 11 Here, CSK did not controvert the accuracy of the statements attributed to the bailiff by H.T. Thus, on this record, the superior court was required to assume H.T.'s affidavit accurately represented the communication. *See Perez*, 187 Ariz. at 357 n. 2, 929 P.2d at 1305 n. 2 (facts in juror affidavits must be accepted as true absent evidence to contrary). Accordingly, we examine the propriety of the bailiff communication, as well as the possibility it was prejudicial, under that assumption.

## A. Whether the Bailiff Communication was Improper

¶ 12 Arizona Rule of Civil Procedure 39(e) provides that a bailiff "shall not allow any communication to be made to [the jury], or make any, except to ask them if they have agreed upon their verdict, unless by order of the court ...." The Arizona Supreme Court has recognized that while communications regarding minor "administrative details" are not improper, *Perez*, 187 Ariz. at 358–59, 929 P.2d at 1306–07, neither a bailiff nor a trial judge should communicate with the jury regarding substantive legal issues or matters of substantial procedural importance without first notifying and giving the parties an opportunity to state their positions and make an appropriate record. *Perkins*, 172 Ariz. at 118, 834 P.2d at 1263. Indeed, our supreme court has also instructed that "inquiries of even arguable substance or significance, whether dealing with legal rules or trial procedure" should be communicated to the parties before any response is made to the jury. *Id.* And, although the source of the improper communication—bailiff or judge—is immaterial, *Perez*, 187 Ariz. at 359–60, 929 P.2d at 1307–08, our supreme court has recognized that because jurors may be more comfortable asking a bailiff a question they would be reluctant to raise with the judge, "there is far more potential for improper advice from a bailiff than from a judge on substantive legal and important procedural matters." *Perez*, 187 Ariz. at 359, 929 P.2d at 1307; *see also id.* at n. 7.

¶ 13 According to H.T.'s affidavit, "[at] one point" the bailiff came into the jury room, "someone" asked "how long deliberations typically lasted," and the bailiff responded that "an hour or two should be plenty." Length of deliberations is beyond the scope of communications allowed under Rule 39(e). Moreover, it is not a minor administrative detail but is a matter of procedural impor-

tance. As noted in an American Law Reports annotation,

> the ideal is that the jury will conduct its deliberations and reach its conclusions in an atmosphere free from outside influences. This ideal includes avoiding time pressures, especially since it is often a necessity, depending primarily on the nature of the case, for the deliberations to take a long time. The disagreements among the jurors can be worked out, most of the time, given a sufficient amount of time for discussions. Yet the jurors and bailiffs are only human, and often there are prohibited jury-bailiff conversations as to just how long this process would take, thus leading to the justified fear that the jurors of a potential holdout jury will be unduly pressured into agreeing with the position of the majority of the jurors rather than trying to convince all the other jurors of their position, or having the jury hang.

Jay M. Zittler, Annotation, *Prejudicial effect, in civil case, of communications between court officials or attendants and jurors,* 31 A.L.R.5th 572, § 2[a] (1995). For these reasons, the bailiff communication was improper.

### B. Whether the Bailiff Communication was Prejudicial

¶ 14 Given the impropriety of the bailiff communication and the superior court's denial of American's new trial motion without holding an evidentiary hearing, the court must have concluded the communication was not prejudicial. *See supra* ¶ 10. Indeed, although the court did not make any explicit findings about the bailiff communication, during oral argument on American's new trial motion, it appeared to find the communication harmless, characterizing the question by "someone" as a "throwaway question" and "not directed to this case, not to the substance of this case at all." The record, however, does not include the facts necessary to find the bailiff communication harmless.

¶ 15 The bailiff communication could have been reasonably interpreted in one of two ways. On one hand, the juror's question was phrased in general terms and the bailiff's response did not directly comment on the law, facts, or evidence in this case. Thus, the communication could have been interpreted by H.T. and any other juror who heard it as having no bearing on the case or their deliberations. On the other hand, the bailiff's response was not phrased in general terms and, instead, could have been construed as being specifically directed to the jury's deliberation in this case—"an hour or two *should be* plenty." (Emphasis added.) The bailiff's response, thus, could have been interpreted by H.T. and any other juror who heard it as an indirect comment on the relative complexity of the evidence and the applicable law. As both interpretations are reasonable, we cannot speculate as to how the jury interpreted the bailiff's response. *See Dunn v. Maras,* 182 Ariz. 412, 422, 897 P.2d 714, 724 (App.1995) ("It would be speculative to suggest that members of the jury drew one rather than another of these conclusions, but it is not speculative to recognize the possibility that they might have drawn any of these conclusions.").[2]

¶ 16 Moreover, the superior court did not have the facts necessary to conclude the bailiff communication could not have prejudiced the jury. As discussed in greater detail below, *see infra* ¶ 22, the Arizona Supreme Court has recognized that both the content of the improper communication and the context in which it was made are relevant in making the required "case-by-case" examination. *Perez,* 187 Ariz. at 358, 929 P.2d at 1306. When the court considered American's motion for new trial, it was aware of the content of the bailiff communication as reported by H.T. Having presided over the trial, it was also aware of the general context of the trial and the jury's deliberations—the trial had lasted for three weeks; the parties had raised multiple and competing claims and introduced evidence that presented a host of factual disputes; at least one juror had ex-

---

**2.** The dissent asserts the parties "did not point to any factual dispute relating to the bailiff's statement that would need to be resolved through an evidentiary hearing." *See infra* ¶ 28. The parties disputed, however, how the jurors who heard the statement would have interpreted or understood the statement and whether the statement was prejudicial.

pressed concern over the length of trial; the jury had begun deliberations later than anticipated, on a Friday afternoon before a three-day weekend; and the jury had returned a verdict that was not unanimous. The record before the superior court, however, did not include facts regarding the context of the communication itself, such as when the communication occurred, how many jurors heard the question and the bailiff's response, whether the jurors asked follow-up questions in response to the bailiff's response, or the amount of time that elapsed between the communication and the jury's verdict. *See infra* ¶¶ 21–22; *Rogers v. United States*, 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975) (five minutes between improper comments and verdict suggested influence on verdict); *Smith v. Convenience Store Distrib. Co.*, 583 N.E.2d 735, 738 (Ind.1992) (ten minutes between improper comments and verdict suggested influence on verdict). Moreover, although CSK did not controvert H.T.'s affidavit, the record does not show what, precisely, the juror asked and how, precisely, the bailiff responded. The only way to obtain these facts was to hold an evidentiary hearing.[3]

▮ ¶ 17 The question then becomes, what is the appropriate resolution. As *Perez* recognized, when there has been an improper communication between court personnel and the jury, the articulation of the applicable legal standard in Arizona "has not … been entirely uniform." 187 Ariz. at 360, 929 P.2d at 1308. Because the bailiff communication

could have been reasonably interpreted in different ways, *see supra* ¶ 15, we cannot say it was "inherently prejudicial." *Id.* at 361, 929 P.2d at 1309 (citation omitted) (internal quotation marks omitted). Accordingly, the communication between the bailiff and the jury should be assessed using a "harmless error inquiry." *Id.* (citing *State v. Rich*, 184 Ariz. 179, 180, 907 P.2d 1382, 1383 (1995)). Further, although Arizona cases do not

> presume[ ] prejudice for any and all communications, they do not require the litigant to demonstrate prejudicial effect when the nature of the error makes it impossible to ascertain the degree of prejudice resulting from the substance of a communication. Thus, prejudice can be "conclusively presumed" when the nature of the error deprives the court of the ability to determine the extent of prejudice.

*Id.* Given this standard—which we are bound to follow—and the factual gaps in the record, as well as the passage of time, American argues that an evidentiary hearing is not feasible and the only remedy is a new trial. We disagree.

▮ ¶ 18 "[T]he [superior] court is in the best position 'to determine what effect, if any, alleged juror misconduct might have had upon other jurors.'" *Brooks*, 170 Ariz. at 553, 826 P.2d at 1179 (quoting *Cota v. Harley Davidson, a Div. of AMF, Inc.*, 141 Ariz. 7, 10, 684 P.2d 888, 891 (App.1984)). This remains true even when, as here, significant time has passed since the improper commu-

---

**3.** The dissent concludes the bailiff communication was not prejudicial by relying on a series of assumptions, *see infra* ¶¶ 31–33, and its own interpretation of what the bailiff's response actually meant. *See infra* ¶ 33 (bailiff's response "did not relate to a disputed fact or a disputed legal issue," "introduce extraneous evidence," or "benefit or prejudice either side"). But, as discussed above, H.T. and any other juror who heard the communication could have reasonably understood the bailiff's comments to be a comment on the complexity of the evidence and applicable law. *See supra* ¶ 15.

The dissent also concludes the bailiff communication was not prejudicial by relying on various statements by counsel and the court characterizing or describing the case as simple. *See infra* ¶¶ 34–35. The dissent takes counsel's statements during closing argument out of context. The dissent also ignores the multiple state-

ments made by the superior court both before and after the jury returned its verdict characterizing the case as complex and difficult. For example, after closing arguments the court told the parties, "it's been a long three weeks and the jury has a difficult task at hand," and described the trial as "difficult." Further, at oral argument on American's new trial motion, the court reminded counsel it had cautioned the parties that the case involved a number of acronyms, technical jargon and terms of art and that if the parties "didn't make things simple and straightforward for the jury, that they would, in the Court's experience, have a difficult time." More importantly, even if this case had in fact been simple, the parties were still entitled to a fair trial and one in which the bailiff was not acting "as a 'filter' of information or a source of wisdom or advice." *Perez*, 187 Ariz. at 360, 929 P.2d at 1308.

nication occurred. *See State v. Miller*, 178 Ariz. 555, 558, 875 P.2d 788, 791 (1994). In *Miller*, our supreme court remanded the case to the superior court for it to determine whether an evidentiary hearing was feasible notwithstanding the fact that the trial had occurred four years earlier because "[w]hile the delay in this case may have rendered a productive hearing at this point unlikely, the lower court is in the best position to determine if the jurors can be reassembled and whether their memories are sufficiently reliable to ensure that [the] defendant received a fair trial." *Id.*

¶ 19 Following the approach taken in *Miller*, we remand to the superior court for it to determine whether an evidentiary hearing is feasible. If it is, the court should conduct the hearing and make appropriate findings, applying the standards set forth in *Perez, supra* ¶ 9, and as discussed below. If an evidentiary hearing is not feasible, the court must set aside the verdict and order a new trial. *See Miller*, 178 Ariz. at 560, 875 P.2d at 793; *Perez*, 187 Ariz. at 360–62, 929 P.2d at 1308–10.

III. Scope of the Evidentiary Hearing

¶ 20 We recognize that often "the nature of the error renders it impossible to prove the extent of any prejudice." *Perkins*, 172 Ariz. at 119, 834 P.2d at 1264, *quoted with approval in Perez*, 187 Ariz. at 360, 929 P.2d at 1308. Indeed, when a bailiff engages in ex parte communications with the jury during its deliberation, Rule 606(b) precludes the jurors from testifying about the actual effect the communication had upon their deliberations or verdict. Although *Perez* identified factors for the court to consider in examining whether a bailiff's ex parte communication with the jury would warrant a new trial, it did not discuss the appropriate scope of the inquiry in such a situation in light of Rule 606(b)'s restrictions. Thus, the question remains, what factors may the superior court properly consider in evaluating the effect of a bailiff's improper communication with the jury.

¶ 21 No Arizona court has considered this precise question in this context. In *Kilgore v. Fuji Heavy Industries Ltd.*, however, the New Mexico Supreme Court considered this question in the context of a communication between a juror and a third party. New Mexico Rule of Evidence 11–606(B) is nearly identical to Arizona's Rule 606(b). *Compare* N.M.R. Evid. 11–606(B) *with* Ariz. R. Evid. 606(b). To assess prejudice, the court identified several relevant inquiries:

1. The manner in which the extraneous material was received;

2. How long the extraneous material was available to the jury;

3. Whether the jury received the extraneous material before or after the verdict;

4. If received before the verdict, at what point in the deliberations was the material received; and

5. Whether it is probable that the extraneous material affected the jury's verdict, given the overall strength of the opposing party's case.

*Kilgore*, 240 P.3d at 656 (citing *New Mexico v. Doe*, 101 N.M. 363, 683 P.2d 45, 48–49 (App.1983)).

¶ 22 These inquiries are consistent with the inquiries identified in Arizona decisions that have analyzed prejudice resulting from ex parte communications with the jury in criminal cases. For example, in *State v. Hall*, 204 Ariz. 442, 448, ¶ 19, 65 P.3d 90, 96 (2003), our supreme court analyzed the effect of an ex parte communication between the bailiff and the jury by examining several factors, including, as relevant here, "whether the prejudicial statement was ambiguously phrased" and "whether the statement was insufficiently prejudicial given the issues and evidence in the case." The court also examined the "trial context," which included

the length of time [the material] was available to the jury; ... whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict.

*Id.* (quoting *United States v. Keating*, 147 F.3d 895, 902–03 (9th Cir.1998)); *see also State v. Aguilar*, 224 Ariz. 299, 302, ¶ 11, 230

P.3d 358, 361 (App.2010) (emphasizing "trial context" as an important consideration when analyzing possible prejudice).

¶ 23 Thus, on remand, if the court determines an evidentiary hearing is feasible, it should hold such a hearing with these inquiries and the analytical framework and factors identified in *Perez, see supra* ¶ 9, in mind.[4]

### IV. Attorneys' Fees and Costs

¶ 24 Both parties have requested attorneys' fees on appeal pursuant to the contract. Because we are remanding to the superior court for it to reconsider American's motion for a new trial, this matter is not yet final. Accordingly, we deny the parties' competing requests for attorneys' fees on appeal without prejudice. At the conclusion of the proceedings, the superior court may consider the fees incurred by the parties on appeal in determining any fee award to the prevailing party. American, however, is entitled to recover its costs on appeal contingent upon its compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

¶ 25 For the foregoing reasons, we remand to the superior court for proceedings consistent with this opinion.

CATTANI, Judge, dissenting.

¶ 26 I respectfully dissent. Although I agree with the Majority that the bailiff's answer to the juror's question regarding how long deliberations "typically" take was inappropriate, I disagree that the trial court abused its discretion by failing to conduct an evidentiary hearing. In my view, given the absence of any asserted factual dispute, the trial court acted well within its discretion when it concluded that no evidentiary hearing was necessary and found that the improper comment was innocuous and not prejudicial. I would thus affirm the trial court's ruling denying American's request that the verdict be set aside.

¶ 27 A trial court has broad discretion in determining whether to grant or deny a request for a new trial. *State Farm Fire & Cas. Co. v. Brown*, 183 Ariz. 518, 521, 905 P.2d 527, 530 (App.1995). Similarly, a trial court has broad discretion in determining whether an evidentiary hearing is necessary to address a claim that jurors considered extraneous prejudicial information during deliberations. *Brooks v. Zahn*, 170 Ariz. 545, 552–53, 826 P.2d 1171, 1178–79 (App.1991). Although the Majority acknowledges the abuse of discretion standard, its decision is inconsistent with an application of that standard, which only permits reversal upon a showing that there has been "an exercise of discretion which is manifestly unreasonable, exercised on untenable grounds or for untenable reasons." *State v. Wassenaar*, 215 Ariz. 565, 570, ¶ 11, 161 P.3d 608, 613 (App.2007) (quoting *State v. Woody*, 173 Ariz. 561, 563, 845 P.2d 487, 489 (App.1992)).

¶ 28 As relevant here, American's motion for new trial was premised on juror H.T.'s sworn statement that "a[t] one point" during deliberations, one of the jurors asked the bailiff "how long deliberations typically lasted," and that the bailiff "told us an hour or two should be plenty." The Majority concludes that the trial court abused its discretion by not ordering an evidentiary hearing to further investigate this communication. But neither party disputed whether the bailiff made the statement at issue, and the parties did not point to any factual dispute relating to the bailiff's statement that would need to be resolved through an evidentiary hearing. Absent an evidentiary dispute, the court could reasonably assess potential prejudice under the assumption that the bailiff made the statement and that all of the jurors heard it.

¶ 29 American's motion for new trial urged the court to presume prejudice based on the bailiff's comment, or alternatively to conduct "further inquiry whether deliberations were improperly curtailed ... [by] the bailiff's statement that one or two hours of deliberations were enough." American did not ex-

---

4. Given our disposition of this matter, we do not need to address the parties' arguments concerning the identity of the prevailing party for an award of attorneys' fees, court costs, and other expenses or the superior court's calculation of attorneys' fees, court costs, and other expenses.

plain, however, what such additional inquiry would entail. In fact, at oral argument on American's motion for new trial, American's counsel suggested a need for additional inquiry only with regard to another juror's alleged application of a beyond a reasonable doubt (rather than the appropriate preponderance of the evidence) standard. The Majority acknowledges that the allegation relating to this juror fell outside the proper scope of inquiry under Arizona Rule of Evidence 606(b), see supra ¶ 8, and thus under the Majority's own reasoning, the trial court properly rejected the sole basis argued by American's counsel for conducting an evidentiary hearing.

¶ 30 Because of the acknowledged prohibition under Rule 606(b)(1) against inquiring into the jurors' mental processes concerning their verdict, determining whether extraneous information prejudiced a party is done through "an *objective analysis* by considering the probable effect of the allegedly prejudicial information on a *hypothetical average juror*." *United States v. Gilsenan*, 949 F.2d 90, 95 (3d Cir.1991) (emphasis added); *see also United States v. Calbas*, 821 F.2d 887, 896 n. 9 (2d Cir.1987) (noting that "postverdict determination of extra-record prejudice must be an objective one, measured by reference to its probable effect on 'a hypothetical average juror'"); *United States v. Boylan*, 898 F.2d 230, 262 (1st Cir.1990) (adopting the Second Circuit's *Calbas* test). Given this objective test, further inquiry into the jurors' subjective reactions to or interpretations of the bailiff's statement in this case would have been improper. Accordingly, there was no need for further evidentiary development.

¶ 31 The Majority nevertheless suggests that the trial court—essentially *sua sponte*—should have inquired into "when the communication occurred, how many jurors heard the question, how many jurors heard the bailiffs response, whether the jurors asked follow up questions in response to the bailiff's statement, or the amount of time that had elapsed between the communication and the jury's verdict." *See supra* ¶ 16. But H.T.'s

affidavit only suggested that there was one statement by the bailiff, and there was thus no basis to pursue an inquiry into whether there were follow-up questions and/or additional statements by the bailiff.[5] Moreover, even setting aside the fact that American did not request additional appropriate inquiry, answers to the questions posed by the Majority were not necessary to resolve whether the bailiff's statement was prejudicial. Assuming answers most favorable to American— i.e., that the communication occurred during a critical point of the deliberations and was heard by all of the jurors—the trial court acted well within its discretion by concluding that the bailiff's comment did not prejudice American's case.

¶ 32 In context, the bailiff's statement was not a directive as to how long the jurors would be required to deliberate. The bailiff was asked how long deliberations "typically lasted," which at face value cannot be construed as a request for a specific directive from the bailiff or the court. In fact, the premise underlying such a question is that there is no specific time requirement and that deliberations may take longer in some cases than in others. The trial court thus correctly characterized the juror's question to the bailiff as "almost a throwaway question. It's not directed to this case, not to the substance of this case at all."

¶ 33 Furthermore, the bailiff's comment did not relate to a disputed fact or a disputed legal issue, and it did not introduce extraneous evidence. Although the bailiff's comment can be construed to have been a suggestion that the case was relatively simple, such a suggestion did not benefit or prejudice either side.

¶ 34 In other circumstances—if, for example, one side had argued that the case was complex, while the other side argued that the case was simple—the bailiff's statement might have been prejudicial. But here, neither party asserted that this was a complex case. Closing arguments were relatively short, and American's counsel, in his closing rebuttal argument, in fact emphasized a lack of complexity, telling the jurors: "Now I am

---

5. H.T. did not interpret the bailiff's response as requiring a verdict within a specified period of

time. H.T. was one of two hold-outs who did not join with the six jurors who reached a verdict.

just going to encourage you to do one thing. I am not going to ask you to look at lots of documents, just look at Exhibit No. 412. Tab two. That's all I want you to look at."

¶ 35 The trial court also made clear its view that this was not a complex case. The court admonished the parties during trial to avoid making the case unnecessarily complicated, and reiterated in its post-trial rulings its view that this was a "moderately simple case." And, most importantly, in rejecting American's argument that the quick verdict was "so aberrational that it's kind of stunning," the court stated, "I don't think it was stunning at all." [6] Given American's counsel's closing argument that focused on the simplicity of the case, and given the trial court's assessment that a quick verdict was not surprising, the court did not abuse its discretion by finding that the bailiff's comment was not prejudicial. *See Sea Hawk Seafoods, Inc. v. Alyeska Pipeline Serv. Co.*, 206 F.3d 900, 906 (9th Cir.2000) (finding no prejudice where bailiff's communications with a juror involving a tasteless joke about another juror did not pertain to "any fact in controversy or any law applicable to the case") (citation omitted).

¶ 36 Finally, the cases on which the Majority relies do not compel the conclusion that the trial court abused its discretion by declining to order an evidentiary hearing or by denying the motion for new trial. For example, the Majority offers a test from a New Mexico case, *Kilgore v. Fuji Heavy Industries Ltd.*, 148 N.M. 561, 240 P.3d 648 (2010), detailing relevant inquiries for assessing whether communications between a juror and a third party were prejudicial. But *Kilgore* involved a juror's receipt of *extraneous evidentiary information* that was directly relevant to the disputed facts and issues being considered. *Id.* at 651–52, 654–55. The plaintiffs in *Kilgore* had sued the designer and manufacturer of an allegedly defective seat belt buckle system in a Subaru vehicle

involved in an accident. *Id.* at 651. A juror obtained extraneous information by seeking the advice of the owner of a Subaru repair shop, who told the juror he had never heard of a Subaru seat belt buckle opening in an accident. *Id.* at 651–52. That type of information clearly differs from the innocuous statement that did not benefit either party in the instant case, and the test set forth in *Kilgore* is thus unwarranted.

¶ 37 The Majority posits that *Kilgore* is consistent with the Arizona Supreme Court's ruling in *State v. Hall*, 204 Ariz. 442, 65 P.3d 90 (2003). But *Hall* similarly involved extraneous evidentiary information: the bailiff told jurors that the defendant had barbed wire tattoos on each wrist that were covered by his clothing, and the jurors spent time during deliberations looking at surveillance videos from the crime scene looking for tattoos on the individual who had committed the crime in question. *Id.* at 447, ¶ 13, 65 P.3d at 95. In that situation, unlike what happened in the present case, prejudice is presumed. *Id.* at ¶ 16.

¶ 38 The Majority also relies extensively on *Perez ex rel. Perez v. Community Hospital of Chandler, Inc.*, 187 Ariz. 355, 929 P.2d 1303 (1997), in which the Arizona Supreme Court detailed a test for determining whether a bailiff's ex parte communications with jurors warrant a new trial. In *Perez*, however, the bailiff essentially restricted what jurors could consider by advising them that they would not be permitted to rehear testimony, and that they would not receive copies of certain transcripts admitted in evidence. *Id.* at 357, 359, 929 P.2d at 1305, 1307. Additionally, after the jurors reached a four-to-four impasse, the bailiff told the jurors (without advising the judge) what would happen if they were unable to reach a verdict. *Id.* Further, the bailiff told the jurors—in response to a question about a doctor escaping liability if the jurors decided to sign the

---

**6.** The Majority suggests that statements relating to the relative simplicity of the case have been taken out of context, and the Majority points to other instances in which the court characterized the trial as "difficult" and cautioned the parties against making the case too complex with acronyms, technical jargon, and terms of art. But our inquiry is a determination of whether the

trial court abused its discretion by implicitly finding that the bailiff's comment did not prejudice American's case, and the most relevant context for that determination is the trial court's assessment, when addressing that very issue, that the quick verdict in this case was neither aberrational nor stunning.

defense verdict form—that obtaining an answer to their question would be time-consuming, and that the jurors should thus be certain they wanted to ask the question. *Id.* at 357, 929 P.2d at 1305. In contrast, here, as noted above, the bailiff's comment was nondescript and did not keep relevant evidence from the jurors or address substantive legal issues.

¶ 39 Unlike cases involving extraneous evidentiary information or improper substantive advice, cases in which a bailiff improvidently "encouraged" jurors to reach a verdict have been affirmed on the basis that the communication was not prejudicial. *See Boykin v. Leapley,* 28 F.3d 788, 790–91 (8th Cir.1994) (finding that bailiff's response to a juror's question regarding what would happen in the event of a hung jury—"I think the Judge would make you go back and deliberate some more"—was not on its face coercive or otherwise prejudicial); *United States v. Weiner,* 578 F.2d 757, 765 (9th Cir.1978) (concluding no prejudice from bailiff allegedly telling a juror that he did not know if the judge "expected" a verdict, but he assumed the judge would "like" a verdict). So too, in this case, the verdict should be upheld on the basis that the communication was not prejudicial.

¶ 40 The trial court was better positioned than this court to assess the impact of the bailiffs comment and to determine whether the comment was prejudicial under a reasonable juror standard. *See State v. Chapple,* 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983) (noting that appellate courts defer because the trial court "has a more immediate grasp of all the facts of the case, an opportunity to see the parties, lawyers and witnesses, and [ ] can better assess the impact of what occurs" in court), *superseded by statute,* A.R.S. § 13–756(A), *in other circumstances.* Thus, we should defer to the trial court's assessment that the statement at issue was "almost a throwaway question" and that the jurors' relatively short deliberations were not surprising given the nature of the case.

¶ 41 In sum, in my view, the trial court did not abuse its discretion by declining to hold an evidentiary hearing or by denying American's motion for new trial. The facts relating to the bailiff's comment were undisputed, and American did not request further factual development relating to the bailiff's comment or indicate what type of permissible evidence would be developed if an evidentiary hearing were to be ordered. Assessing whether the undisputed facts would have affected the verdict involved an *objective* analysis and did not require an evidentiary hearing. Thus, American has not established that the trial court abused its discretion by declining to conduct an evidentiary hearing or by denying the motion for new trial.