875 P.2d 788

STATE of Arizona, Appellee,

v.

Rudy Robert MILLER, Appellant.

No. CR–92–0287–PR.

Supreme Court of Arizona.

June 14, 1994.

Tom Henze and Tracey Westerhausen, Phoenix, for appellant Miller.

Grant Woods, Arizona Atty. Gen. by Paul J. McMurdie, Chief Counsel and Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee State of Ariz.

## OPINION

ZLAKET, Justice.

Defendant was convicted of endangerment and unlawful flight from a law enforcement vehicle. The trial court suspended defendant's sentence, placed him on concurrent three-year terms of probation, and imposed a $150,000 fine plus a $100 felony assessment penalty. The court of appeals affirmed. *State v. Miller*, 173 Ariz. 421, 844 P.2d 588 (Ct.App.1992). We granted review to decide whether the trial court abused its discretion in refusing to hold an evidentiary hearing on defendant's claim of jury misconduct. We hold that it did. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3), and A.R.S. § 12–120.24.

At the close of the evidence, the trial judge dismissed an alternate juror. After he was excused, the alternate left a note on the windshield of a remaining juror's car, which said either "He's guilty" or "My vote is guilty." The juror, Tucker, received this note during the evening recess after deliberations had begun. He did not bring it to the court's attention. The jury returned its verdict the next day. The prosecutor learned about the note during a post-trial conversation with the entire jury. He then disclosed this information to defense counsel, who promptly filed a motion for new trial and request for evidentiary hearing.

At argument on the motion, the prosecutor stated that Tucker told him the note did not affect his decision. He also advised the court that the other jurors had said they only found out about the note after reaching their verdict. The state therefore opposed an evidentiary hearing on the matter. The court rejected the defense request, refused to take testimony or question any of the jurors, and denied the motion for new trial.

■■■ It is undisputed that a criminal defendant is entitled to be tried by an impartial jury. U.S. Const. amends. VI, XIV; *Turner v. State of Louisiana,* 379 U.S. 466, 471–72, 85 S.Ct. 546, 549, 13 L.Ed.2d 424 (1965). "The requirement that a jury's verdict 'must be based upon the evidence developed at the trial' goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury." *Id.* at 472, 85 S.Ct. at 549 (quoting *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961)). The danger of compromising this integrity is never greater than when the process is contaminated by outside influences. *See id.; Gibson v. Clanon,* 633 F.2d 851, 854 (9th Cir.1980), *cert. denied,* 450 U.S. 1035, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981).

In such a situation, the court's response should be "commensurate with the severity of the threat posed." *United States v. Thomas,* 463 F.2d 1061, 1063 (7th Cir.1972). In this case, the substantial risk of prejudice demanded something more than what the trial court did. Any private communication, contact or tampering with a juror gives rise to a strong presumption that the verdict has been tainted. *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); *Mattox v. United States,* 146 U.S. 140, 148–50, 13 S.Ct. 50, 52–53, 36 L.Ed. 917 (1892). The fact that the communication here related to the ultimate issue in the case—defendant's guilt or innocence—should have persuaded the judge that further inquiry was necessary.

Without questioning the jury, the court could not have known whether other jurors knew of the note or received similar communications from the alternate, and in either case, whether they were improperly influenced by him. According to defense counsel, the alternate seemed to have had a good relationship with the other jurors as well as with Tucker. Even the prosecutor acknowledged in his remarks to the trial court that the alternate had apparently been well liked by his peers. And the fact that the alternate had previously heard all the evidence may have caused Tucker or the other jurors to place more weight on his opinion than they would otherwise accord a stranger. Under these circumstances, the possibility of improper influence certainly warranted investigation. Thus, we hold that the trial court abused its discretion in denying the request for an evidentiary hearing.

The difficulty here is in fashioning an appropriate remedy, as this trial occurred in June and July of 1990. The arguments against ordering a hearing at this late date are understandable. Memories fade with time. Assuming the jurors can be reassembled, testimony obtained now might be suspect, and its reliability subject to challenge. Moreover, the judge who saw the witnesses and heard the case on its merits has long since retired. Ordering a hearing now will leave another judge who had no involvement in the trial with the difficult task of determining whether the communication prejudiced the verdict.

We have previously recognized that in some situations, lengthy delay necessitates a new trial. *See, e.g., State v. Hart,* 110 Ariz. 55, 514 P.2d 1243 (1973) (twelve-year delay and death of trial judge made a new trial necessary, as a hearing to reconstruct the transcript would have been futile). Other

courts have come to similar conclusions in juror misconduct cases, *see, e.g., Thomas,* 463 F.2d 1061 (two-year delay on claim that prejudicial newspaper article was in jury room and used by some jurors to persuade others); *United States v. Rhodes,* 556 F.2d 599 (1st Cir.1977) (unspecified, lengthy delay on reporter's allegation that he saw a juror with a newspaper and was told by several others that the jury had discussed publicity surrounding defendant), as well as in other contexts. *See, e.g., United States v. Ives,* 574 F.2d 1002 (9th Cir.1978) (six-year delay in determination of defendant's competency to stand trial); *State v. Rodriguez,* 27 Ariz.App. 689, 558 P.2d 717 (1976) (three-year delay in competency hearing); *United States v. David,* 511 F.2d 355 (D.C.Cir.1975) (two-year delay in determination of whether jury trial waiver was knowing and voluntary); *Mares v. United States,* 383 F.2d 805 (10th Cir.1967) (eleven-month delay involving hearing on potential prejudicial effect of trial publicity).

The contrary view, that delay should not preclude a hearing where jurors are available, is not without support. *See United States v. Thompson,* 908 F.2d 648 (10th Cir. 1990), *opinion modified on reh'g per curiam, id.* at 655 (1990). *Thompson* involved allegations that jurors had newspapers containing harmful articles in their possession. As in this case, the trial court erred in failing to hold a hearing to determine if defendant was prejudiced. Although the circuit court's initial remedy was a new trial, it later modified its opinion to instead remand for a determination of whether a hearing years later could, in fact, elicit reliable responses or whether the delay made a new trial inevitable.

█ A majority of this court agrees with the foregoing approach.[1] While the delay in this case may have rendered a productive hearing at this point unlikely, the lower court is in the best position to determine if the jurors can be reassembled and whether their memories are sufficiently reliable to ensure that this defendant received a fair trial. Justice Corcoran's special concurrence suggests that it may not be necessary for the trial judge to reassemble and interrogate *all* of the jurors. We leave that question for another day, noting only that the improper influence of even one juror taints a verdict. *Whitson v. State,* 65 Ariz. 395, 399–400, 181 P.2d 822, 824–25 (1947); *Lovett v. State,* 516 A.2d 455, 475 (Del.1986), *cert. denied,* 481 U.S. 1018, 107 S.Ct. 1898, 95 L.Ed.2d 504 (1987); *United States v. Hendrix,* 549 F.2d 1225, 1227 (9th Cir.1977), *cert. denied,* 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977).

█ In Arizona, juror misconduct warrants a new trial if the defense shows actual prejudice *or if prejudice may be fairly presumed from the facts. State v. Vasquez,* 130 Ariz. 103, 105, 634 P.2d 391, 393 (1981) (emphasis added). Prejudice may be presumed here, because "[i]n a criminal case, any pri-

---

1. The Chief Justice and I reluctantly join the majority in remanding for a hearing. We would prefer to simply order a new trial. We believe a hearing now is futile in light of the three and a half year delay and the type of misconduct involved here. The person initiating this contact was not a mere spectator or other disinterested person, but an alternate juror, apparently liked and respected by the other jurors. *See State v. Hooper,* 145 Ariz. 538, 548, 703 P.2d 482, 492 (1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986). Tucker received the note during deliberations, when the potential for harm was high. *Id.; Thomas,* 463 F.2d at 1065 (there are fewer opportunities to counteract prejudice during deliberations than at other stages of trial). The nature of this communication ("He's guilty") was not casual, but related directly to the ultimate issue in the case—defendant's guilt or innocence. Finally, the evidence here was not so overwhelming as to lead us to conclude that any taint was harmless. In fact, the credibility of

defendant and his witness was directly at issue here.

The only purpose of a hearing now would be to elicit testimony from the jurors—assuming they could all be located—that they did not receive this or similar communications, and if they did, that it did not affect their verdict. However, testimony by the jurors themselves that they were not improperly influenced by a third party communication may be insufficient depending on the circumstances. *Whitson v. State,* 65 Ariz. 395, 399, 181 P.2d 822, 824 (1947). Adding the passage of time and the retirement of the original judge to this mix, it appears to us that a new trial is necessary and that remand now will only result in a waste of judicial resources. We also worry that a hearing at this late date might raise due process concerns. *People v. McNamee,* 67 Mich.App. 198, 205, 240 N.W.2d 758, 762 (1976); *People v. Miller,* 92 Ill.App.3d 1148, 1152, 416 N.E.2d 765, 769 (1981).

vate communication, contact or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial...." *Remmer,* 347 U.S. at 229, 74 S.Ct. at 451. This presumption is rebuttable, and the burden rests with the government to show that the third party communication did not taint the verdict. *Id.*[2]

Justice Martone's concurrence suggests that *Remmer* may be inapplicable here because the communication came from an alternate juror, which he asserts is somehow less egregious. His conclusion is based on the premise that alternate jurors are not truly discharged until after the verdict is reached. However, nothing in the record before us, which is incomplete on this issue, indicates that this alternate was only "conditionally excused" as Justice Martone contends.[3]

Furthermore, there is no provision in the rules for such a practice. Rather, the Arizona Rules of Criminal Procedure make it abundantly clear that a real distinction exists between jurors and alternates once deliberations begin.[4]

Justice Martone also indicates that some judges now encourage jurors to discuss the case during trial, implying that but for the timing of this communication, it might not have constituted juror "misconduct" at all. Such a practice is contrary to Rule 19.4, Ariz.R.Crim.P., which explicitly states that Arizona courts are required to "admonish the jurors not to converse *among themselves* or with anyone else on any subject connected with the trial.... until the action is finally submitted to them." (emphasis added).[5] We

---

**2.** Some have questioned the continuing validity of *Remmer's* allocation of burdens after *Smith v. Phillips,* 455 U.S. 209, 214–18, 102 S.Ct. 940, 944–46 (1982), which held that where allegations of juror bias are made, a trial court should hold a hearing to determine whether bias exists, rather than simply ordering a new trial automatically. *See, e.g., United States v. Pennell,* 737 F.2d 521, 532–34 (6th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985) (reading *Smith* as overruling *Remmer's* burdens and presumptions). One court notes, however, that *Smith* simply emphasized the need to conduct a hearing, and did not address the burden of proof in third party contact cases. *United States v. Littlefield,* 752 F.2d 1429, 1431–32 (9th Cir.1985) (criticizing *Pennell).* Moreover, most federal courts have not departed from *Remmer's* allocation of burdens and presumption of prejudice in third party contact cases. *See United States v. Butler,* 822 F.2d 1191, 1195–96 n. 2 (D.C.Cir.1987) (citing others and noting that only sixth circuit reads *Smith* so broadly); *see also Smith,* 455 U.S. at 221–28, 102 S.Ct. at 948–52 (Marshall, J., with whom Brennan and Stevens, JJ., joined, dissenting) (reiterating that *Remmer's* burdens and presumptions are still the law). We agree, and do not read *Smith* as affecting the burdens and presumptions set forth by *Remmer.* And, contrary to the suggestion contained in the concurring opinion by Justice Martone, we believe *Smith* is distinct from the present case and from *Remmer,* as it does not involve third party contact.

**3.** In fact, the clerk's minute entry suggests quite the opposite. It says that the alternate, when identified before the start of deliberations, was *"excused from further consideration* of this cause." Minute Entry of June 28, 1990 at 2 (emphasis added). Thus, discharge appears to have been unconditional.

**4.** Rule 18.2 states that "[a]ll jurors shall be deemed regular jurors *until alternates are designated* pursuant to Rule 18.5(h)" (emphasis added), and the comments to Rule 18.5(h) state that "[n]o distinction between jurors and alternates is made *until the deliberations are to begin; ..."* (emphasis added). Finally, Rule 22.4 is inapplicable to alternates. It requires discharge of jurors when "their verdict has been recorded ...;" when "there is no reasonable probability that the jurors can agree upon a verdict," or when "[a] necessity exists for their discharge." As alternate jurors cannot by law participate in deliberations, *see Hooper,* 145 Ariz. at 548, 703 P.2d at 492, it follows that Rule 22.4—with the possible exception of the third clause—does not apply to alternates.

**5.** Even those courts outside Arizona which allow or encourage such behavior provide for a condition that the jurors not come to any conclusion or make up their minds on the merits until deliberations. See law review article cited by Justice Martone in footnote 1: B. Michael Dann, *"Learning Lessons" and "Speaking Rights": Creating Educated and Democratic Juries,* 68 Ind.L.J. 1229, 1266–68 & n. 252 (1993). Thus, this communication—"He's guilty"—would probably not have been allowed in those jurisdictions either. Furthermore, some courts have gone so far as to hold that such a practice is unconstitutional. *See, e.g., State v. Washington,* 182 Conn. 419, 426–27, 438 A.2d 1144, 1147–48 (1980) (citing cases and holding that an instruction to jurors that they could discuss evidence during trial provided they did not deliberate violated due process, as it authorized and encouraged jurors to consider evidence unaided by final instructions on applicable law).

therefore see no reason to distinguish alternates from other outsiders for purposes of applying *Remmer.* Whether contact by an alternate is more or less egregious will ultimately turn on the particular circumstances of the case. We have previously held, however, that prejudice necessarily results if an alternate juror aids a jury in its deliberations. *State v. Hooper,* 145 Ariz. 538, 548, 703 P.2d 482, 492 (1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986); *see also State v. Rocco,* 119 Ariz. 27, 28–29, 579 P.2d 65, 66–67 (Ct.App.1978).

On remand, then, the trial judge must award a new trial unless the state can prove beyond a reasonable doubt that the contact did not impact the verdict. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (federal constitutional error requires showing that error is harmless beyond reasonable doubt); *Gibson,* 633 F.2d at 853–54 (finding *Chapman* applicable in third party contact cases); *State v. Washington,* 182 Conn. 419, 428, 438 A.2d 1144, 1149 (1980) (applying reasonable doubt standard to case involving jurors discussing merits of the case prior to deliberations). Testimony by the jurors that they were not improperly influenced may not itself dispose of this burden. *Whitson,* 65 Ariz. at 399, 181 P.2d at 824; *but see Smith v. Phillips,* 455 U.S. 209, 217 n. 7, 102 S.Ct. 940, 946 n. 7, 71 L.Ed.2d 78 (1982) (citing *Dennis v. United States,* 339 U.S. 162, 171, 70 S.Ct. 519, 523, 94 L.Ed. 734 (1950)). While we agree with *Smith* that juror testimony regarding bias is not "inherently suspect," we note that it is the trial judge's duty to consider the surrounding circumstances in addition to such testimony. Where the circumstances render the likelihood of prejudice great, a juror's own conclusion that he or she was not influenced should be questioned. The right to an impartial jury demands that the judge err in favor of defendant in such circumstances.

We therefore vacate the court of appeals' opinion and remand this case to the trial court to determine whether a hearing at this late date is feasible. If so, the judge is to proceed with the hearing and make appropriate findings consistent with this opinion. If not, the judge must set aside the verdict and order a new trial.

FELDMAN, C.J., and MOELLER, V.C.J., concur.

CORCORAN, Justice, specially concurring:

I concur in the result reached by the majority.

The trial court abused its discretion by denying the defendant's request for a hearing. A hearing should have been held so that jurors and other witnesses could have testified at a time when recollections were most fresh. I believe, however, that a new judge can hold a hearing at which available jurors and other witnesses can testify about the past events. I do not believe that it is necessary or indispensable to have the testimony from all jurors before relief could be granted or denied to defendant. We are remanding so that the trial court can have a hearing to elicit the facts. We should not prejudge what the evidence will be.

MARTONE, Justice, concurring in the judgment.

I agree that the trial court committed error when it refused to hold an evidentiary hearing on the question of whether the alternate juror's note affected the verdict. I share the court's concern that the trial court declined to hold a hearing and that the state opposed a hearing. It would have been so simple at that time for the trial judge to have called in the alternate juror and juror Tucker, and examined them. He also could have conducted whatever further inquiry may have been indicated. Trial judges are very used to telling jurors throughout the trial that they must not discuss the case with each other. They are also very used to examining jurors who violate the court's admonition. Rarely is any harm done.

Thus, we must now do what the trial judge should have done, and I join in the court's disposition. I write separately because I do not share the court's intense concern about this particular communication from an alternate juror. Nor do I share the concerns

expressed that a new trial rather than a remand is indicated.

This is not a case of jury tampering. When a third party or litigant privately communicates with a juror during trial about the case, it is cause for great concern. It is for that reason that it is "deemed presumptively prejudicial," and requires an evidentiary hearing to get to the bottom of it. *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). But this is not such a case. The note here came from an alternate juror, someone who, although excluded from deliberating, was in all other respects a juror. *See* Rules 18.2 and 18.5(h), Ariz.R.Crim.P. The alternate heard all of the evidence and all the instructions. He was not released from his obligations as a juror until a verdict was reached. *See* Rule 22.4(a), Ariz.R.Crim.P. If a regular juror had died or become otherwise unavailable, the alternate juror would have replaced that juror and would have had to discuss the case with other jurors. Thus, this alternate made a communication that, depending upon contingent circumstances, could have been an appropriate comment between jurors at some stage of the proceedings.[1] I agree, of course, that having been conditionally released from deliberations, the note was improper, but it was not nearly as insidious a communication as one between a juror and a party, a witness, or a court official. This alternate juror's contact is on the lower end of the spectrum of juror misconduct, and thus I do not share the court's intense alarm over the prospect that it may have affected the outcome.

This leads me to the second point. The remedy for the trial court's failure to hold a hearing is to now grant an evidentiary hearing. We cannot speculate about prejudice. My experience suggests that jurors are, for the most part, quite independent and not easily tainted by the views of their colleagues. Absent an evidentiary hearing that

would show otherwise, we cannot say that this was not a fair trial. Indeed, as the court itself notes, "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982). Even in the case of real jury tampering, as in *Remmer,* a new trial is not the initial remedy. Instead, the trial court must hold a hearing to decide whether there has been prejudice. *Id.* at 216, 102 S.Ct. at 945. If a hearing is appropriate for true jury tampering, it is all the more appropriate for a case in which an alternate juror improperly communicates with a regular juror. The potential for harm is much less here.

On remand, the judge and counsel will have an opportunity to interrogate the alternate juror, regular juror Tucker, and any other juror whose testimony may be desirable, just as though Tucker had received the note during trial. *See* Rule 19.4, Ariz. R.Crim.P. If the judge is satisfied that the communication did not affect the verdict, the trial is saved. If the judge cannot make that finding, the defendant will be entitled to a new trial. I do not share the court's concern that a juror's own conclusion that he or she was not influenced should be suspect. I agree with the Supreme Court of the United States that it is wrong to consider such evidence "inherently suspect." *Smith v. Phillips,* 455 U.S. at 217 n. 7, 102 S.Ct. at 946 n. 7.

Due process entitles the defendant to a fair trial, not a perfect one. *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). On remand, the judge will get to decide whether the alternate juror's communication made a difference. That is all common sense requires.

---

1. Indeed, judges elsewhere (unconstrained by Rule 19.4, Ariz.R.Crim.P.) now encourage jurors to talk to each other during trial while their memories are still fresh and their concerns immediate. The literature is supportive of such an approach. *See* B. Michael Dann, *"Learning Lessons" and "Speaking Rights": Creating Educated and Democratic Juries,* 68 Ind.L.J. 1229, 1262–68

(1993). Under such a regime the alternate's communication here would have been encouraged, not discouraged. How then does it become jury tampering just because the communication is made while conditionally excused? Is the effect on other jurors really different because the note was given later rather than earlier?