IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

AMERICAN POWER PRODUCTS, INC., A CALIFORNIA CORPORATION;
LFMG/APP, LLC, AN ARIZONA CORPORATION,
*Plaintiffs/Counterdefendants/Appellants/Cross-Appellees,*

*v.*

CSK AUTO, INC., AN ARIZONA CORPORATION,
*Defendant/Counterclaimant/Appellee/Cross-Appellant.*

No. CV-14-0261-PR
Filed February 5, 2016

Appeal from the Superior Court in Maricopa County
The Honorable George H. Foster, Jr., Judge
No. CV2005-019594
**AFFIRMED**

Opinion of the Court of Appeals, Division One
235 Ariz. 509, 334 P.3d 199 (App. 2014)
**REVERSED AND REMANDED**

COUNSEL:

Herbert Dodell, Dodell Law Corporation, Woodland Hills, CA; and David B. Goldstein (argued), Hymson Goldstein & Pantiliat, PLLC, Scottsdale, Attorneys for American Power Products Inc. and LFMG/APP LLC

Leon B. Silver (argued), Andrew S. Jacob, Gordon & Rees LLP, Phoenix, Attorneys for CSK Auto Inc.

JUSTICE BRUTINEL authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES TIMMER and BERCH (RETIRED) joined.

JUSTICE BRUTINEL, opinion of the Court:

¶1        During jury deliberations after a lengthy trial, a juror asked the bailiff how long deliberations usually lasted. Without consulting anyone, the bailiff answered, "an hour or two should be plenty." We hold that the trial court did not err by denying the plaintiff's motion for a new trial based on the bailiff's statement without first holding an evidentiary hearing. Although the statement was plainly improper, it was not objectively prejudicial and there was no significant fact question about what occurred.

## I. BACKGROUND

¶2        In 2005 American Power Products, Inc. ("American") sued CSK Auto, Inc. ("CSK") for breach of contract, and CSK counterclaimed. The eventual trial lasted twelve trial days and included twenty-four witnesses and 164 exhibits, one of which was more than 4000 pages long.

¶3        Closing arguments were heard on a Friday before a three-day weekend. Although American sought more than $5 million in damages, its counsel attempted to simplify the case and focus the jury's attention on a small number of exhibits. For example, at one point he said, "I am not encouraging you to look at every single exhibit, but this is an important one." Later, in rebuttal, he encouraged the jurors to "just look at Exhibit No. 412. Tab two. That's all I want you to look at."

¶4        Counsel for CSK argued that the jury should award more than $1.6 million on its counterclaims. In the alternative, however, he suggested that the jury might simply reject all the claims and counterclaims and award American the $10,733 that CSK conceded it owed and that the parties had agreed would be the "starting point" for computing damages. After deliberating for one to two hours, the jurors returned a 6-2 verdict awarding American $10,733.

¶5        Subsequently, American hired a private investigator who obtained affidavits from two jurors about their deliberations. The affidavit from juror H.T. described a communication between the bailiff and the jury that qualified as possible "extraneous prejudicial information" under Arizona Rule of Evidence 606(b)(2). Juror H.T.'s affidavit stated that "[at] one point the bailiff . . . came into the room. Someone asked her how long deliberations typically lasted. She told us an hour or two should be plenty."

**¶6** Relying on the affidavits, American moved for a new trial. American argued that, "at a minimum [the affidavits] create a ground for further inquiry whether deliberations were improperly curtailed both by improper jury conduct and the bailiff's statement that one or two hours of deliberations were enough." CSK argued that Evidence Rule 606 precluded admission of all statements in the affidavits except juror H.T.'s description of the communication between the bailiff and the jury.[1] CSK did not dispute that the bailiff communication occurred as alleged. Rather, CSK argued that, although improper, the communication was insubstantial and did not raise an inference of actual prejudice.

**¶7** At oral argument on the motion, the court indicated that it agreed with CSK that only the statement about the bailiff communication would be admissible under Evidence Rule 606 and that the bailiff communication was not prejudicial. The court characterized the communication as a "throwaway question" that was "not directed to this case, not to the substance of this case at all." In addition, when counsel for American contended that the jury's rapid verdict was "so aberrational that it's kind of stunning," the court responded that it "[didn't] think it was stunning at all." The court also implied that the quick verdict might have resulted from the attorneys' failure to heed the court's admonition to simplify the case, which, the court pointed out, featured a confusing combination of detailed contract provisions, numerous acronyms, and technical jargon. The trial court denied the motion for a new trial without holding an evidentiary hearing.

**¶8** A divided court of appeals reversed and remanded. *Am. Power Prods., Inc. v. CSK Auto, Inc.*, 235 Ariz. 509, 517 ¶ 25, 334 P.3d 199, 207 (App. 2014). The majority found that the trial court could not determine from the record how the jury might have interpreted the bailiff's comment. This uncertainty meant that prejudice should be presumed, and therefore the trial court erred by denying the new trial motion without holding an evidentiary hearing. The dissent concluded that the trial court acted within

---

[1]Arizona Rule of Evidence 606(b)(1) states, "During an inquiry into the validity of a verdict in a civil case, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment."

its discretion in determining, on the basis of H.T.'s uncontested affidavit alone, that the communication was not prejudicial.

¶9        We granted review because this case raises an issue of statewide importance.  We have jurisdiction under article 6, section 5(3) of Arizona's Constitution and A.R.S. § 12–120.24.

## II.  DISCUSSION

¶10        We review the trial court's denials of a motion for a new trial and a requested evidentiary hearing for abuse of discretion.  *See State v. Miller*, 178 Ariz. 555, 556, 875 P.2d 788, 789 (1994); *Adroit Supply Co. v. Elec. Mut. Liab. Ins. Co.*, 112 Ariz. 385, 389, 542 P.2d 810, 814 (1975).

¶11        Bailiffs are prohibited from communicating ex parte with the jury, other than about mere administrative details.  Ariz. R. Civ. P. 39(e), (g); *see Perez ex rel. Perez v. Cmty. Hosp. of Chandler, Inc.*, 187 Ariz. 355, 359, 929 P.2d 1303, 1307 (1997) (noting that improper ex parte communications may come from a bailiff or a judge and "there is far more potential for improper advice from a bailiff than from a judge on substantive legal and important procedural matters").  If an ex parte communication prejudices jury deliberations, the verdict must be vacated and a new trial ordered. *Perez*, 187 Ariz. at 362, 929 P.2d at 1310.  But we do not presume prejudice from the mere occurrence of an ex parte communication.  *Id.* at 361, 929 P.2d at 1309.  Instead, courts examine ex parte communications on a "case-by-case basis, applying a two-prong inquiry: (1) Was there an improper communication? and (2) Was the communication prejudicial or merely harmless?"  *Id.* at 358, 929 P.2d at 1306.  Because we agree with the parties and the court of appeals that the bailiff's statement was improper, we focus on whether it was prejudicial.

### A.  Lack of Factual Dispute

¶12        If there is no significant factual question, the trial court may grant or deny a motion for a new trial without holding an evidentiary hearing.  *See State v. Spears*, 184 Ariz. 277, 289, 908 P.2d 1062, 1074 (1996) (concluding that the trial court did not abuse its discretion in denying defendant a new trial without first holding an evidentiary hearing when a juror's post-verdict affidavit stated that jurors had considered notes from an alternate juror but did not indicate that the notes contained extraneous

information that was damaging or prejudicial). If there is a significant question as to what occurred or whether the affiant is credible and whether the alleged facts, if true, would establish a basis for granting the motion, the court must hold an evidentiary hearing before ruling on a motion for new trial. *See, e.g., Perez*, 187 Ariz. at 357 n.3, 929 P.2d at 1305 n.3 (finding that the trial court erred in limiting evidentiary hearing to one of three alleged improper communications when details of the communications were not fully known); *Miller*, 178 Ariz. at 557, 875 P.2d at 790 (finding that the trial court erred in denying motion for a new trial without first holding an evidentiary hearing when the only information about the improper communication came second-hand from the prosecutor).

¶13 Here the trial court was not required to hold an evidentiary hearing before ruling on the motion for new trial because there was no dispute as to what occurred. Both parties agreed that the bailiff said that "one or two hours should be plenty." In finding that the trial court erred, the court of appeals reasoned that the jury could have understood the bailiff's statement as either (1) an innocuous estimate of the typical duration of jury deliberations or (2) an "indirect comment on the relative complexity of the evidence and the applicable law." *CSK*, 235 Ariz. at 514 ¶ 15, 334 P.3d at 204. Because it concluded that the trial court did not have the facts necessary to determine which of the two interpretations the jury adopted, it found an evidentiary hearing necessary to address questions "regarding the context of the communication itself," including the specific content of the communication, "whether the jurors asked follow-up questions in response to the bailiff's response, or the amount of time that elapsed between the communication and the jury's verdict." *Id.* at 515 ¶ 16, 334 P.3d at 205.

¶14 But even if we assume that such questions would have been proper under Evidence Rule 606, we conclude that the mere existence of potential "context" questions does not compel the trial court to hold an evidentiary hearing. As the dissent recognized, "neither party disputed whether the bailiff made the statement at issue, and the parties did not point to any factual dispute relating to the bailiff's statement that would need to be resolved through an evidentiary hearing." *Id.* at 517 ¶ 28, 334 P.3d at 207 (Cattani, J., dissenting). Accordingly, the trial court reasonably could have concluded that the affidavit accurately set forth the bailiff's answer, all jurors heard that answer, and if there had been more to the ex parte communication either the affiant or American would have raised it.

## B. Absence of Prejudice

**¶15**        Although we have previously addressed ex parte communications with jurors, our articulation of the standard for determining prejudice in such situations "has not . . . been entirely uniform." *Perez*, 187 Ariz. at 360, 929 P.2d at 1308. We have found that an improper communication did not necessitate a new trial absent an "affirmatively probable" showing of prejudice. *S. Pac. R.R. Co. v. Mitchell*, 80 Ariz. 50, 65, 292 P.2d 827, 837 (1956). Similarly, we have noted that "a communication between judge and jury outside the presence of defendant and counsel [may be] harmless error." *State v. Rich*, 184 Ariz. 179, 180, 907 P.2d 1382, 1383 (1995) (quoting *State v. Mata*, 125 Ariz. 233, 241, 609 P.2d 48, 56 (1980)). But we have also rejected a harmless error analysis when we found that the judge's legally erroneous jury instruction—that only jurors who had voted in favor of liability should participate in the calculation of damages—deprived the defendants of the fundamental right to trial by the full jury. *Perkins v. Komarnyckyj*, 172 Ariz. 115, 120, 834 P.2d 1260, 1265 (1992) ("Given the nature of the substantive error made in the *ex parte* communication in the present case, however, Defendants were deprived of a fundamental right, and a harmless error analysis is therefore inappropriate."). We reasoned in *Perkins* that "we cannot require a litigant to show the extent of prejudice resulting from an error when, as a practical matter, the nature of the error renders it impossible to prove the extent of any prejudice." *Id.* at 119, 834 P.2d at 1264. In other words, because we could not know or assume what result the full jury might have reached had a correct instruction been given, the "nature of the error" required us to "presume[]" prejudice. *Id.* Finally, while maintaining *Perkins*'s "nature of the error" language in *Perez*, 187 Ariz. at 362, 929 P.2d at 1310, we clarified and narrowed this standard, declining "to adopt a strict rule of presumed prejudice" and affirming that improper ex parte communications are subject to harmless error analysis. *Perez*, 187 Ariz. at 358, 929 P.2d at 1306.[2]

---

[2]Our cases reflect that, although the standard of proof differs, *see Rich*, 184 Ariz. at 181, 907 P.2d at 1384 (requiring in a criminal case that the state prove an ex parte communication harmless beyond a reasonable doubt), the same analysis applies to both civil and criminal cases. *Id.* (citing *Perkins*, 172 Ariz. at 118, 834 P.2d at 1263); *Perez*, 187 Ariz. at 360, 929 P.2d at 1308 (citing *Rich*, 184 Ariz. at 180, 907 P.2d at 1383).

¶16        That the nature of an error may render it impossible to prove the extent of any prejudice does not warrant a presumption of prejudice and ordering a new trial in all cases.  Rather, it recognizes the practical reality that, in certain circumstances, it is "impossible to prove the extent of prejudice," and that a judge should not require a party to bear that impossible burden in order to secure a new trial.  *See Perkins*, 172 Ariz. at 119, 834 P.2d at 1264; *Perez*, 187 Ariz. at 360, 929 P.2d at 1308.  Because Evidence Rule 606 bars jurors from testifying about whether any given occurrence affected their decisions or those of fellow jurors, the nature of an ex parte communication with the jury may "render[] it impossible to prove the extent of prejudice."  *Perkins*, 172 Ariz. at 119, 834 P.2d at 1264; *Perez*, 187 Ariz. at 360, 929 P.2d at 1308; *see* Ariz. R. Evid. 606(b)(1).  A trial court can never determine with certainty what might or might not have swayed a juror's decision because direct testimony on that matter is prohibited.  Ariz. R. Evid. 606(b)(1).

¶17        Even so, our rules charge the trial judge with deciding, based on the available evidence, whether the error likely "affect[ed] the substantial rights of the parties" such that refusing to order a new trial would be "inconsistent with substantial justice."  Ariz. R. Civ. P. 61; *see also* Ariz. Const. art. 6, § 27 ("No cause shall be reversed for technical error in . . . proceedings when upon the whole case it shall appear that substantial justice has been done.").  In cases like *Perkins*, where the improper communication creates a structural defect in the trial that deprives a litigant of an essential right, the trial judge must conclusively presume prejudice.  *Perkins*, 172 Ariz. at 119–20, 834 P.2d at 1264–65.  Such error cannot be harmless.  *See id.*  In all other cases, because the court cannot inquire into the effect of the communication on individual jurors, the court must determine whether the communication would likely prejudice a hypothetical average juror.  *See United States v. Boylan*, 898 F.2d 230, 262 (1st Cir. 1990); *United States v. Calbas*, 821 F.2d 887, 896 n.9 (2d Cir. 1987) (noting that "post-verdict determination of extra-record prejudice must be an objective one, measured by reference to its probable effect on 'a hypothetical average juror'"); *accord Kilgore v. Fuji Heavy Indus. Ltd.*, 240 P.3d 648, 655 (N.M. 2010) (citing 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 606.05 [2][b] (2d ed. 2010)).  In other words, the moving party is not required to prove actual prejudice, but is required to demonstrate the objective likelihood of prejudice.  *See Mitchell*, 80 Ariz. at 65, 292 P.2d at 837; *Kilgore*, 240 P.3d at 656 ("[T]he burden remains on the moving party throughout the proceedings to prove the ultimate fact in

7

issue, i.e., that there is a reasonable probability that the extraneous material affected the verdict or a typical juror.").

¶18    Having determined that the trial court in this case was not required to hold an evidentiary hearing, we consider whether the court abused its discretion in denying American's motion for new trial.    In deciding if a communication would have prejudiced a hypothetical average juror, we consider factors such as whether the communication related to the evidence presented, the applicable law, or the ultimate issue in the case, or whether it clearly interfered with the jury's decision-making process.  *See Perez*, 187 Ariz. at 358–61, 929 P.2d at 1306–09; *infra* ¶ 20.

¶19    Here the trial court reasonably determined that the bailiff's statement had no bearing on the issues.  The statement did not relate to any specific or disputed fact or the strength of the evidence presented by either side; nor did it involve any legal issue in the case.  While the trial was lengthy and complex, in closing arguments, both parties attempted to simplify the case and focus the jury's attention on a few key pieces of evidence.    Both parties discouraged the jurors from leafing through hundreds of trial exhibits.  Thus, unlike the cases in which we have found prejudice, the bailiff's comment did not favor one party over the other or clearly interfere with the jury's deliberations or decision-making process. *See infra* ¶ 20.  The court characterized the communication as a response to a "throwaway question" that was not directed "to the substance of this case at all" and noted that the rapid verdict was "[not] stunning at all."  We defer to the findings of the trial court that considered the juror's affidavit after having observed the entire trial.

¶20    American cites several cases in which we determined that a trial court abused its discretion in not finding prejudice and ordering a new trial.  All these cases, however, involved ex parte communications more serious and substantive—that is, more objectively prejudicial—than that at issue here.  *See, e.g., Perez*, 187 Ariz. at 357, 929 P.2d at 1305 (finding prejudice in a medical malpractice action where the bailiff, without informing the judge or the parties of the jurors' questions, (1) erroneously told the jurors they would not be permitted to receive copies of the trial transcript or re-hear portions of the testimony, (2) erroneously informed the jurors of the procedure in the event of a deadlock, and (3) discouraged jurors from asking the judge a question about the effect of a defense verdict on a specific doctor's liability); *Miller*, 178 Ariz. at 557, 875 P.2d at 790

(finding prejudice in a criminal trial where an alternate juror, after being dismissed at the close of evidence, placed a note on a remaining juror's car stating either "My vote is guilty" or "He's guilty"); *Perkins*, 172 Ariz. at 116–17, 834 P.2d at 1261–62 (finding prejudice in a medical malpractice action where the trial judge erroneously instructed that jurors who had voted against liability should not participate in the calculation of damages). In each of these cases, the communication at issue was likely to prejudice jurors.

## III. CONCLUSION

¶21          We reverse the court of appeals' opinion and affirm the trial court's denial of American's motion for new trial. We remand the case to the court of appeals for consideration of issues raised but not decided on appeal, including the parties' claims for attorneys' fees, court costs, and other expenses.