SUPREME COURT OF ARIZONA

| | |
|---|---|
| STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CR-17-0201-AP |
| Appellee, | ) |
| | ) Yuma County |
| v. | ) Superior Court |
| | ) No. S1400CR201400685 |
| PRESTON ALTON STRONG, | ) |
| | ) **FILED 05/26/2020** |
| Appellant. | ) |
| | ) |
| | ) |

**DECISION ORDER**

The Court en banc[1] has considered the briefs and arguments of the parties; the trial court's minute entries, transcripts, and orders; and the relevant statutes and case law in this matter. The Court rules as follows.

In June 2014, Preston Alton Strong was indicted for the 2005 murders of six Yuma residents ("La Mesa Murders"). In April 2017, the jury found Strong guilty of six counts of first degree murder, and it subsequently imposed a death sentence on each count. This appeal followed. Here, we address Strong's claim that juror misconduct, and a juror's knowledge of a prior murder conviction, deprived him of his constitutional right to a fair trial.

Following a 2012 trial, Strong was convicted for the 2007 murder of a Yuma doctor, Dr. Gill ("Gill Murder"). In the present case, Strong moved to preclude evidence about the Gill Murder, and the State responded that it did not intend to use such evidence in the guilt phase. Strong also moved for a change of venue based, in part, on his assertion that "all potential jurors will be aware of the [Gill Murder case]." The trial court denied the venue motion, noting that "[t]here are many procedures that the Court can utilize to ensure that the defendant has his case

---

[1] Justice Gould did not participate in the determination of this matter. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable John Pelander, Justice of the Arizona Supreme Court (Retired), was designated to sit in this matter.

heard by a fair and impartial jury," including "the summoning of a large panel of prospective jurors, juror questionnaires, and individual questioning of prospective jurors who state they have knowledge of this case and/or the [Gill Murder] case."

The State later filed a motion to admit evidence regarding the Gill Murder in its case-in-chief. The trial court precluded the evidence, finding that its probative value was substantially outweighed by its prejudicial nature: "The fact that the defendant committed another murder may lead the jury to convict him of the instant offenses on the basis that he is a habitual criminal rather than on the basis of the State's evidence."[2]

Jury selection took place in January 2017. The prospective jurors completed written questionnaires that included the following questions: "Have you seen, heard or read anything about this case?"; "Have you heard anyone express an opinion about this case?"; and "Is there anything that would make it difficult for you to be a fair and impartial juror or to render a verdict in this case?" Additionally, prospective jurors were brought into the courtroom in groups and asked: "Have any of you seen or heard any coverage or any information regarding the facts of this case, whether it be in the media, social media, or out in the community otherwise, or in any other way heard about this case?"

In response to these questions, and upon further individual questioning, several prospective jurors stated that they had read or heard Strong had murdered a doctor or had a prior murder conviction. The parties and trial court agreed "that anybody who already knows about the [Gill Murder] case is going to be excused even if they say they can put it out of their mind." The court excused nineteen jurors on this basis. Additionally, during trial, the court excused a seated juror after the juror acquired information about the Gill Murder despite the juror's assertion that she would not let it influence her decision.

Juror 47 was one of those who raised their hand when her group was asked about media coverage. When questioned separately, Juror 47 said she had heard about the La Mesa

---

[2] The evidence of Strong's prior conviction for the Gill Murder was admitted in the aggravation phase of trial.

Murders when they occurred in 2005, and recently in news reports that Strong was accused of the La Mesa Murders. The questioning included this exchange:

> THE COURT: Have you heard in the past or recently or at any point anything regarding the defendant in this case specifically?
> JUROR 47: No.
> THE COURT: Never heard the name before?
> JUROR 47: Not till I was on the jury duty, you know.

Ultimately, Juror 47 was selected for the jury in this case.

After trial and sentencing, Strong filed a Rule 24.1 motion for new trial on the grounds that Juror 47 did not reveal during voir dire that she knew about his conviction for the Gill Murder. Strong also filed a Rule 24.2 motion to vacate judgment based on juror misconduct and deprivation of his right to a fair trial, and he requested an evidentiary hearing. The motions were supported by the defense investigator's written summary of his interview of Juror 47. According to the summary, Juror 47 stated that she learned of the Gill Murder at the time it happened and heard about the conviction when it occurred, as they were widely reported in the media. Juror 47 further stated that questioning during voir dire did not ask about knowledge of the defendant's other criminal case, and her knowledge of Strong's prior conviction did not influence her decision at trial.

The trial court heard argument on the motions and subsequently denied the motion for new trial, finding it untimely. The court also denied the motion to vacate judgment, without conducting an evidentiary hearing, finding that Strong "ha[d] shown neither juror misconduct nor that the jury's guilty verdict was influenced by any knowledge of the [Gill Murder] conviction." Order Re: Motion to Vacate Judgment. Before the court ruled on the motions but after argument, Strong filed a supplement to the motion to vacate judgment and requested an evidentiary hearing pursuant to *Godoy v. Spearman*, 861 F.3d 956 (9th Cir. 2017), on the juror misconduct claim. The record does not indicate whether the court considered Strong's supplement to the motion.

When "faced with allegations of improper contact between a juror and an outside party, courts apply a settled two-step framework" based on *Mattox v. United States*, 146 U.S. 140

(1892), and *Remmer v. United States*, 347 U.S. 227 (1954) (*Remmer I*). *Godoy*, 861 F.3d at 959. The same analytical framework should be applied to the circumstances and allegations presented in this case, involving information about Strong's conviction for the Gill Murder that was not properly admitted during the guilt phase of the trial.

At step one, the trial court determines whether the alleged information known to the juror was "possibly prejudicial." *Id*. at 966–67 (quoting *Mattox*, 146 U.S. at 150). To meet this "low threshold," the defendant must present evidence that has a "tendency to be injurious to the defendant," *id.* at 966 (citation omitted) (internal quotation marks omitted), and is "sufficiently improper as to raise a credible risk of affecting the outcome of the case," *id.* at 967. "[T]he defendant's burden at step one to show a possibility of prejudice is not onerous." *Id.* at 968. "The defendant need only demonstrate a *credible* risk, and the presumption [of prejudice] may arise even when '[w]e do not know from th[e] record . . . what actually transpired, or whether the incidents that may have occurred were harmful or harmless.'" *Id.* (quoting *Remmer I*, 347 U.S. at 229).

Once the defendant shows a juror has received evidence not admitted during the trial or phase of trial that is possibly prejudicial, the presumption of prejudice attaches, and in step two, the burden shifts to the state to prove that knowledge of the information was harmless. *Id.* "Harmlessness in this context means 'that there is no reasonable possibility that the [external information] influence[d] the verdict.'" *Id.* (quoting *Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d 691, 697 (2004)). If the state does not show harmlessness, the conviction is unconstitutional, and the court must grant the defendant a new trial. *Id.* at 959, 969; *see Remmer v. United States*, 350 U.S. 377, 382 (1956) (*Remmer II*). If the prejudicial effect of the external information is unclear from the existing record, the trial court must hold an evidentiary hearing to determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial. *Godoy*, 861 F.3d at 959 (citing *Remmer I*, 347 U.S. at 229–30); *see State v. Miller*, 178 Ariz. 555, 557 (1994) (finding the trial court abused its discretion by failing to hold an evidentiary hearing when there was a "substantial risk of prejudice" due to jurors' receipt of external information).

In this case, because Strong established the presumption of prejudice, but it is unclear from the existing record whether he, in fact, suffered prejudice, Strong is entitled to an evidentiary hearing. Therefore,

**IT IS ORDERED** staying the appeal in CR-17-0201-AP.

**IT IS FURTHER ORDERED** remanding with instructions to the trial court to hold an evidentiary hearing to determine the circumstances of Juror 47's alleged misconduct and knowledge of the Gill Murder and prior conviction, and whether or not it was harmless. Noting that the trial judge no longer serves on the Superior Court, the case shall be assigned to a regular serving non-pro tem judge of the Yuma County Superior Court.

**IT IS FURTHER ORDERED** vacating the trial court's decision denying "Juror Misconduct (Claim #5)" in the Order Re: Motion to Vacate Judgment and remanding the matter to the court for reconsideration after the evidentiary hearing.

DATED this 26th day of May, 2020.

/S/
_____
Chief Justice Robert M. Brutinel

TO:

Lacey Stover Gard
Laura P Chiasson
Harriette P Levitt
Preston Alton Strong, ADOC 256997, Arizona State Prison, Florence Eyman Complex-
    Browning Unit (SMU II)
Jon R Smith
Hon David M Haws
Hon Stephen J Rouff
Hon Lynn Fazz
Timothy R Geiger
Dale A Baich
Amy Armstrong