NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LEON HINES, JR., *Appellant.*

No. 1 CA-CR 20-0397
FILED 11-18-2021

Appeal from the Superior Court in Maricopa County
No. CR2018-001315-001
The Honorable Jeanne M. Garcia, Judge, *Retired*

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Maurice Portley[1] joined.

---

**T H U M M A,** Judge:

¶1 Defendant Leon Hines, Jr., appeals his convictions and resulting sentences for 17 felony counts of sexual crimes against children. Although vacating two financial assessments as violating the prohibition against ex post facto laws, Hines has not otherwise shown error. As a result, his convictions and resulting sentences are affirmed.

## FACTS[2] AND PROCEDURAL HISTORY

¶2 Hines' wife operated a daycare at their Phoenix residence. Beginning in 2008, girls who attended the daycare began disclosing incidents of Hines inappropriately touching them at various times starting in 1988. Phoenix Police Detectives investigated the allegations.

¶3 In 2018, a grand jury returned an 18-count indictment charging Hines with dangerous crimes against children, including: 11 counts of sexual conduct with a minor; three counts of sexual abuse; two counts of child molestation; and one count each of kidnapping and furnishing obscene material to a minor. One of the molestation charges was dismissed before trial.

¶4 After the jury began deliberations, Hines moved for a mistrial based on a conversation between Juror 10 and two other jurors during a break. The court addressed the jury collectively and the three jurors individually about the purported comments. Although denying the motion for mistrial, the court dismissed Juror 10 and replaced her with an alternate.

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3, of the Arizona Constitution.

[2] The evidence is construed in a light most favorable to sustaining the verdicts, resolving all reasonable inferences against Hines. *See State v. Payne*, 233 Ariz. 484, 509 ¶ 93 (2013).

¶5        After renewed deliberations, the jury found Hines guilty on all counts. The court sentenced Hines to a combination of concurrent and consecutive presumptive prison terms, including three consecutive life terms with the possibility of release after 35 years. Hines was allowed to file a delayed notice of appeal. This court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031, and -4033(A)(1) (2021).[3]

## DISCUSSION

### I.        Hines Has Not Shown Error in the Denial of his *Batson* Challenge

¶6        Hines argues the court erred by denying his challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the State's peremptory strike of the only remaining African American potential juror (Prospective Juror 18). Challenging a peremptory strike under *Batson* "involves three steps: (1) The defendant must make a prima facie showing of discrimination, (2) the prosecutor must offer a race-neutral reason for each strike, and (3) the trial court must determine whether the challenger proved purposeful racial discrimination." *State v. Medina*, 232 Ariz. 391, 404 ¶ 44 (2013) (internal quotation marks and citations omitted). As applicable here, a decision regarding the prosecution's rationale for a peremptory strike is reviewed for clear error. *State v. Roque*, 213 Ariz. 193, 203 ¶ 12 (2006), *abrogated on other grounds by State v. Escalante-Orozco*, 241 Ariz. 254, 267 ¶¶ 13-14 (2017).

¶7        Hines first argues the State's reasons for striking Prospective Juror 18 were not supported by "record evidence." To support his argument, Hines relies on *State v. Ross*, 250 Ariz. 629 (App. 2021). As noted by the State, Ross was depublished by the Arizona Supreme Court on October 6, 2021. Even if *Ross* had not been depublished, it does not show error in this case. In *Ross*, the dispositive issue was whether the prosecutor's avowed observation of a potential juror "blessing" the defendant constituted "record evidence" that the court could find properly constituted a race-neutral reason for striking a potential juror. 250 Ariz. at 635, ¶ 23. Concluding, on those unique facts, it did not, *Ross* found a *Batson* violation. *Id.* at 635-38 ¶¶ 24, 29-30, 38-39.

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**¶8** Here, by contrast, the State's race-neutral reason for striking Prospective Juror 18 was his "distrust or [dis]belief in the inaction of police," evidenced in his statements during jury selection. The voir dire transcript reflects that Prospective Juror 18 explained he had witnessed a murder in another state, and the police "wrote it off as another violence thing." He also said that family members who worked in law enforcement thought he would not be a fair and impartial juror.

**¶9** Prospective Juror 18's on-the-record statements during voir dire amounted to "record evidence" for evaluating the State's proffered race-neutral reason for striking him. *See id.* at 634 ¶ 23 (noting "record evidence" for a *Batson* challenge includes "a prospective juror's answers, provided under oath, during voir dire").[4] *Ross* therefore does not support Hines' argument.

**¶10** As to the third *Batson* prong, Hines implies that the court erred by failing to "make specific findings about the prosecutor's reasons or demeanor." This argument, however, is waived as it is not supported with any argument or authority. *See State v. Bolton*, 182 Ariz. 290, 298 (1995) ("Failure to argue a claim on appeal constitutes waiver of that claim."). The record supports the court's determination that the State proffered a race-neutral reason for striking Prospective Juror 18. The court therefore did not err in denying Hines' *Batson* challenge.

## II. Hines Has Not Shown That Improper Profile Evidence Was Admitted at Trial

**¶11** Without objection, Dr. Wendy Dutton testified for the State as a "blind" or "cold" expert, meaning she did not testify about any case-specific factual information. Rather, based on research in the field and her own experience as a forensic interviewer, Dutton described forensic interviewing techniques, the "process of victimization," and general behavioral traits and characteristics of child victims of sexual abuse.

---

[4] Hines also argues the State's reference to a YouTube video of Prospective Juror 18's "show" was insufficient evidence of a different race-neutral reason for the strike. But because Prospective Juror 18's comments during voir dire provided sufficient evidence to deny the Batson challenge, the propriety of the YouTube video is immaterial.

**¶12**        Hines argues Dutton's testimony constituted improper profile evidence and should have been precluded. He relies almost entirely on *State v. Starks*, 251 Ariz. 383, 387 ¶ 1, 391 ¶ 21 (2021) (concluding, on facts presented, that Dutton's testimony was "profiling testimony" leading to "reversible error"). Because Hines did not timely object on this basis, this court reviews for fundamental error. *See* Ariz. R. Evid. 103; *State v. Escalante*, 245 Ariz. 135, 138 ¶ 1 (2018). Hines therefore "bears the burden to establish that (1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice." *State v. James*, 231 Ariz. 490, 493 ¶ 11 (App. 2013).

**¶13**        Profile evidence is an informal compilation of behavioral characteristics typical of persons who commit a particular crime. *See State v. Haskie*, 242 Ariz. 582, 585 ¶ 14 (2017). Although admissible in limited circumstances, profile evidence is generally inadmissible as substantive proof of guilt. *See, e.g.*, *State v. Garcia-Quintana*, 234 Ariz. 267, 272–73 ¶¶ 23–24 (App. 2014) (citing *State v. Lee*, 191 Ariz. 542, 545 ¶ 14 (1998)).

**¶14**        In *Starks*, a molestation case, the defendant preserved for appeal his claim that Dr. Dutton's cold expert testimony constituted improper profile evidence. 251 Ariz. at 388 ¶ 7. On appeal, *Starks* found Dutton "simply listed things that sexual abusers commonly do to establish a relationship with the victim to enable the sexual abuse." *Id.* at 390 ¶ 16. *Starks* concluded such testimony was improper profile evidence that served "to improperly invite the jury to conclude that Starks was guilty because his actions matched those that the expert reported to be common to perpetrators." *Id.* Noting Dutton "did not attempt to explain any victim behavior," *id.*, and her testimony generally "lacked the larger context of victimization," *id.* at 392 ¶ 21, *Starks* concluded Dutton's testimony served no purpose other than as improper profile evidence, *id.* at 393 ¶ 30. The court then concluded that admitting the evidence constituted reversible error. *Id.* at 395 ¶ 42.

**¶15**        Here, unlike in *Starks*, Dutton's testimony mainly explained victim behavior and forensic interviewing. Indeed, the "larger context of victimization" found lacking in *Starks* was forecast here in the State's opening statement:

> Dr. Dutton is a designated forensic interviewer
> . . . and expert in the field of victimology. She
> will address various topics on child victims of
> sexual abuse, how these crimes happen, the
> psychological effects that they have, and how

and why these victims disclose these crimes the
way that they do.

Dutton's testimony followed this forecast. And in contrast with *Starks*, the
prosecutor here did not rely on improper profile evidence during closing
arguments, but only mentioned Dutton's testimony briefly to explain the
victims' delayed disclosures. Given these differences, Hines has failed to
establish error, let alone fundamental error. *See Starks*, 251 Ariz. at 389 ¶ 11
("A cold expert may testify about 'general patterns of behavior' of child
sexual abuse victims.").

### III. Hines Has Shown No Error in the Denial of His Motion for Mistrial

¶16 Hines contends he was entitled to a mistrial because some
jurors violated their oath and the court's admonition against discussing the
case outside the jury room. Specifically, Hines claims Juror 10 improperly
influenced other jurors, which led to a biased jury. According to Hines, he
was presumptively prejudiced and remand for a new trial is required. This
court reviews a ruling on a motion for mistrial for juror misconduct for an
abuse of discretion. *See State v. Dann*, 220 Ariz. 351, 370 ¶ 106 (2009); *State
v. Walton*, 159 Ariz. 571, 581 (1989).

¶17 The closing instructions to the jury contained a standard
admonition that the jurors were "not to discuss the case with each other, or
anyone else during breaks or recesses" and were not to tell anyone "how
you stand, numerically or otherwise, until after you have reached a verdict
or have been discharged." During a break during deliberations, a court
reporter overheard three jurors discussing "the case, . . . [and] their
deliberations" while walking. Specifically, while getting on an elevator
with the three jurors, the court reporter heard "[o]ne of the males [say] that
he didn't believe . . . deliberations would take that long based on Count 1,
maybe by the end of the day or tomorrow," to which Juror 10 responded,
"I can't believe anyone would vote not guilty."

¶18 The court reporter properly informed the court, and the
parties were advised of the incident. Hines then moved for a mistrial,
arguing Juror 10 improperly discussed the case outside the jury room and
"has made up her mind" in violation of the admonition. Alternatively,
Hines asked that Juror 10 be excused from continuing to serve on the jury.

¶19 Before ruling on Hines' motion, the court addressed the issue
with the jury in open court and none of the jurors said they knew about
improper juror discussions outside of deliberations. The court then

questioned the three identified jurors individually. Juror 10 admitted she talked with two other jurors about the case "in generalities . . . one of the votes that we already had[,] . . . not in particulars of guilt or not guilty" as they went to lunch, but she did not recall the specific comment attributed to her. The two jurors who accompanied Juror 10 stated they did not hear her talk about the case or the deliberations outside the jury room. The court then denied the mistrial motion but dismissed Juror 10 from further service.

¶20          The court acted within its discretion by addressing Hines' motion. Faced with the prospect of either denying the motion in full or declaring a mistrial—the most "dramatic remedy" for trial error—the court reasonably chose the intermediate option Hines suggested and dismissed Juror 10. *See State v. Speer*, 221 Ariz. 449, 462 ¶ 72 (2009) ("Mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted."). And despite Hines' speculation to the contrary, nothing suggests Juror 10's violation of the admonition influenced the remaining jurors or otherwise prejudiced Hines. *See State v. Miller,* 178 Ariz. 555, 558 (1994) ("juror misconduct warrants a new trial  if the defense shows actual prejudice or if prejudice may be fairly presumed from the facts"). Moreover, any improper influence Juror 10's lunchtime comments had on the other jurors was remedied by the trial court's replacement of Juror 10 with an alternate juror, after which the reconstructed jury began deliberations anew.

¶21          Absent actual prejudice, Hines relies on *Miller* to argue prejudice should be presumed. In *Miller*, a deliberating juror received a note from a designated alternate juror stating a belief that the defendant was guilty. 178 Ariz. 555 at 557. Upon learning about the note, the defendant requested a new trial, which the court denied without receiving evidence about the note. *Id.* On appeal, noting "the possibility of improper influence certainly warranted investigation," the court held the failure to inquire into the note's influence on the jury was an abuse of discretion. *Id.* Noting that, "[i]n a criminal case, any private communication, contact or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial," *id.* at 558-59 (quoting *Remmer v. United States*, 347 U.S. 227 (1954)), the Court remanded for the State to have an opportunity to rebut the presumption of prejudice, *id.* at 560.

¶22          As *Miller* made clear, presumptive prejudice applies only when an "outside influence" compromises the integrity of a jury trial. *Id.* at 557. *Miller,* a case involving a third-party's apparent attempt to influence

7

the jury, is not controlling here where a deliberating juror made comments in violation of the admonition. Hines cites no authority to support a presumption of prejudice resulting from a violation of the admonition such as occurred here. For these reasons, Hines has not shown that the superior court abused its discretion in denying his motion for mistrial.

## IV. Hines Was Properly Sentenced on Count 5 for a Dangerous Crime Against Children

¶23        Hines argues he was improperly sentenced under A.R.S. § 13-705 for the kidnapping conviction (Count 5) because the verdict form did not require a jury finding that the victim was less than 15 years old. *See* A.R.S. § 13-1304 (B). The jury, however, also found Hines guilty of Counts 3 and 4, both of which alleged the same date of offense and the same victim as alleged in Count 5. In doing so, the jury expressly found the victim was less than 12 years old. Nothing in the record suggests that, had the verdict form for Count 5 properly required a specific finding for the victim's age, the jury would have found she was 15 or older.

## V. Two Financial Assessments Violate the Prohibition Against Ex Post Facto Laws

¶24        Hines argues that three of the financial assessments imposed at sentencing violate the Ex Post Facto clauses of the federal and state constitutions. Those provisions prohibit the legislature from enacting a law that "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *State v. Yellowmexican*, 142 Ariz. 205, 206-07 (App. 1984) (*quoting Weaver v. Graham*, 450 U.S. 24, 28 (1981)); *see* U.S. Const., art. 1, §§ 9, 10; Ariz. Const., art. 2, § 25.

¶25        The State concedes that all three statutes authorizing the challenged assessments became effective after 2009, the most recent date alleged in the indictment. The State's concession is appropriate. *See* A.R.S. §§ 12-116.04, -116.05, -116.09. The question then becomes whether the challenged assessments constitute "a punishment" or "additional punishment." The State again properly concedes that both the $13 criminal penalty imposed under § 12–116.04 and the $2 Victims' Rights Fund assessment imposed under § 12–116.09 are punishments because their authorizing statutes refer to them each as a "penalty assessment." *See State v. Beltran*, 170 Ariz. 406, 408 (App. 1992) (reference in authorizing statute to "penalty assessment" reflects Legislature's determination that assessment

is a "punishment" and therefore subject to the prohibition against ex post facto application).

**¶26**     As for the third assessment -- a $50 address confidentiality assessment -- the authorizing statute refers to an "assessment" not a "penalty assessment." *See* A.R.S. § 12–116.05(A). Thus, under *Beltran's* reasoning, the address confidentiality assessment is not a "punishment" and therefore is not subject to ex post facto principles. Hines cites no authority to the contrary.

**¶27**     Because the $13 criminal penalty imposed under § 12–116.04 and the $2 Victims' Rights Fund assessment imposed under § 12–116.09 violate the prohibition against ex post facto laws, they are vacated.

## CONCLUSION

**¶28**     The $13 criminal penalty imposed under § 12–116.04 and the $2 Victims' Rights Fund assessment imposed under § 12–116.09 are vacated. In all other respects, Hines' convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:     AA