IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**SHEROLD D. ROAF,**
*Plaintiff/Appellee,*

*v.*

**STEPHEN S. REBUCK CONSULTING, LLC, ET AL.**
*Defendants/Appellants.*

No. CV-23-0233-PR
Filed June 25, 2024

Appeal from the Superior Court in Maricopa County
The Honorable Timothy J. Thomason, Judge (Retired)
No. CV2019-003654
**REVERSED AND REMANDED**

Memorandum Decision of the Court of Appeals, Division One
No. 1 CA-CV 22-0620
Filed Aug. 8, 2023
**VACATED**

COUNSEL:

David L. Abney (argued), Ahwatukee Legal Office P.C., Phoenix; and Timothy G. Tonkin, Steven J. Jones, Phillips Law Group P.C., Phoenix, Attorneys for Sherold D. Roaf

William H. Doyle (argued), Brandon D. Millam, Nathan R. Andrews, Doyle Hernandez Millam, Phoenix, Attorneys for Stephen S. Rebuck Consulting LLC dba Medstar Medical Transport, Medstar Medical Transportation LLC dba Medstar Medical Transport, and Francisco J. Celaya Ortiz and Jane Doe Celaya Ortiz

Kristin M. Mackin, William J. Sims III, Sims Mackin, LTD., Phoenix, Attorneys for Amicus Curiae Arizona Municipal Risk Retention Pool

Daniel Rubinov, Rafat H. Abdeljaber, Christian Lorenz, RAJ Law PLLC,

Phoenix, Attorneys for Amicus Curiae Arizona Association for Justice

Amanda Heitz, Lauren L. Walter, Bowman and Brooke LLP, Phoenix, Attorneys for Amicus Curiae Arizona Association of Defense Counsel

---

CHIEF JUSTICE BRUTINEL authored the Opinion of the Court, in which VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, LOPEZ, BEENE, MONTGOMERY, and KING joined.

---

CHIEF JUSTICE BRUTINEL, Opinion of the Court:

¶1 In this case an employer admitted both direct and vicarious liability for its employee's tortious actions. Nonetheless, the trial court admitted evidence of the employee's personnel record and driving history in a damages-only trial and submitted separate claims of negligent hiring and vicarious liability to the jury, in addition to the claim for the employee's negligence.

¶2 The trial court should have precluded the personnel record and driving history because evidence related to the negligent hiring claim was not relevant to the only issue before the jury: the amount of compensatory damages. We also find that the defendant was prejudiced by this error, warranting a new trial.

## I. BACKGROUND

¶3 In January 2018, while working for defendant Medstar, Francisco Ortiz rear-ended Sherold Roaf's car on State Route 101 in Scottsdale. In July 2019, Roaf sued Ortiz for negligence and sued Medstar under theories of both (1) vicarious liability for Ortiz's negligent driving and (2) direct liability for Medstar's negligent hiring, supervision, and retention ("negligent hiring") of Ortiz. Roaf sought compensatory and economic damages. He did not seek punitive damages.

¶4 Medstar admitted liability for the incident, but never moved to dismiss the negligent hiring claim. Instead, it moved in limine to prevent Roaf from introducing Ortiz's personnel record and driving history.

Medstar argued any evidence relating to fault would be irrelevant and would improperly influence the jury. Medstar also argued that because Roaf did not bring a claim for punitive damages, there was no other purpose for which the evidence would be relevant. The court denied the motion, reasoning that, although it would "keep in mind that 100% of the fault in this case [was] going to be allocated to the defendants" and "determine if any of the material [was] relevant at trial," Roaf was "entitled to pursue both theories" of liability.

¶5        At trial, Roaf's counsel declared in opening statements that the issue of liability was "taken care of." Nevertheless, he raised Ortiz's driving record and Medstar's hiring policy. During direct examination of Ortiz, Roaf's counsel established that Ortiz had at least three moving violations within three years before his hiring and that Medstar's policies precluded an applicant from being hired as a driver if the applicant had more than three moving violations or accidents in the three years prior to hiring. In closing, Roaf's counsel emphasized this evidence.

¶6        In back-and-forth discussions before the jury's deliberation, the court expressed uncertainty about allowing the negligent hiring claim to proceed to the jury. Roaf asked for a jury instruction on how the jury should apportion fault between Ortiz and Medstar. Medstar argued that apportionment was unnecessary and stated that it wanted to admit on the record that Medstar negligently hired Ortiz. Ultimately, the court allowed the fault allocation instruction and submitted the negligent hiring claim to the jury. In its final jury instructions, the court told the jury to allocate fault between Ortiz "in connection with the accident" and Medstar's fault "in connection with the negligent hiring, supervision or retention claim" in percentages adding up to 100%. The jury instructions noted that Medstar had admitted both vicarious liability for Ortiz's negligent actions and direct liability for negligent hiring, supervision, and retention of Ortiz.

¶7        The jury found Roaf's full damages to be $4.625 million. It allocated 40% fault to Ortiz and 60% to Medstar.

¶8        Medstar moved for a new trial, arguing, in part, that the negligent hiring claim was superfluous and had allowed Roaf to put prejudicial evidence before the jury. The court disagreed and denied the motion, finding that the evidence of Ortiz's driving history had no unfair influence and that the damage award was supported by other evidence.

**¶9** The court of appeals agreed that the jury's award was appropriate based on the evidence and that Medstar failed to show that the trial court committed prejudicial error by allowing the separate claims of negligent hiring and vicarious liability to go to the jury. The court determined that it did not need to rule on whether the negligent hiring claim should have gone to the jury because Defendants did not show how any related error prejudiced them. Even if admitting Ortiz's personnel record was error, the court reasoned, any error was harmless because it related to the uncontested issue of fault and had no bearing on damages.

**¶10** We granted review to address whether prejudicial error occurred when the trial court allowed the plaintiff to introduce evidence based on separate claims of negligent hiring and vicarious liability when Medstar admitted liability for both claims and there was no claim for punitive damages. This Court has jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## II. DISCUSSION

**¶11** We review a trial court's denial of a motion for a new trial for an abuse of discretion. *State v. Hoskins*, 199 Ariz. 127, 142 ¶ 52 (2000). In addition, "[w]e will not disturb a trial court's rulings on the exclusion or admission of evidence unless a clear abuse of discretion appears and prejudice results." *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506 (1996).

### A. Vicarious And Direct Negligence

**¶12** We first consider whether Roaf should have been able to present evidence relevant to Medstar's alleged liability for negligently hiring Ortiz.

**¶13** Under Arizona law, each defendant in a personal injury action is liable only for the "damages allocated to that defendant in direct proportion to that defendant's percentage of fault." A.R.S. § 12-2506(A). In a jury trial, the jury determines the amount of damages to which the plaintiff is entitled and then determines the percentage of fault attributable to each defendant. *See id.* Damages are then apportioned based on those percentages to decide the amount owed by each defendant. *See id.* To determine those percentages, the jury "shall consider the fault of all persons who contributed to the alleged injury, death or damage to property,

4

regardless of whether the person was, or could have been, named as a party to the suit." § 12-2506(B). "Assessments of percentages of fault for nonparties are used only as a vehicle for accurately determining the fault of the named parties." *Id.* Generally, "Arizona's pure comparative fault scheme protects defendants from bearing more than their fair share of liability for a plaintiff's injuries under the harsh common-law rule of joint and several liability." *Cramer v. Starr*, 240 Ariz. 4, 7 ¶ 11 (2016) (quoting *Watts v. Medicis Pharm. Corp.*, 239 Ariz. 19, 26 ¶ 20 (2016)).

¶14        Arizona's comparative fault regime notwithstanding, "[u]nder the doctrine of respondeat superior, an employer is vicariously liable for 'the negligent work-related actions of its employees.'" *Kopp v. Physician Grp. of Ariz., Inc.*, 244 Ariz. 439, 441 ¶ 9 (2018) (quoting *Engler v. Gulf Interstate Eng'g, Inc.*, 230 Ariz. 55, 57 ¶ 9 (2012)). Employers are liable for such acts if they occur while "the employee is acting within the scope of employment when the accident occurs." *Engler*, 230 Ariz. at 57 ¶ 9 (internal quotation marks omitted).

¶15        Section 12-2506(D) addresses the respondeat superior doctrine, providing an exception to comparative fault: "[A] party is responsible for the fault of another person, or for payment of the proportionate share of another person, if . . . [t]he other person was acting as an agent or servant of the party." An employer that is vicariously liable for an employee's actions is wholly responsible for the employee's fault. *See Laurence v. Salt River Project Agric. Improvement & Power Dist.*, 255 Ariz. 95, 105 ¶ 41 (2023) ("[T]he doctrine of respondeat superior imputes the employee's tortious acts to the employer, not the employee's liability."). Apportionment of fault is therefore not necessary when an employer is vicariously liable because no fault remains for the factfinder to apportion.

¶16        In this case, apportionment of fault was unnecessary, and general principles of comparative fault did not apply. Because it admitted liability, Medstar was wholly responsible for Roaf's damages. Although Roaf brought both vicarious and direct negligence claims against Medstar, he did not seek any damages for injuries separately sustained as a result of Medstar's conduct, nor did he seek punitive damages against Medstar. The only issue for the jury to decide was the amount of damages owed to Roaf due to the collision, and the court erred by instructing the jury to apportion fault.

¶17 For the same reasons, evidence that was not relevant to the damages question before the jury was irrelevant and inadmissible. *See* Ariz. R. Evid. 402. Evidence of liability relating to the negligent hiring claim should have been precluded because Medstar admitted Ortiz was negligent in causing the accident, admitted Medstar was vicariously liable, and admitted Medstar negligently hired Ortiz.

¶18 We need not decide whether the trial court erred in not dismissing Roaf's negligent hiring claim because in this case it was irrelevant to the jury's determination. To be sure, negligent hiring is a separate claim from vicarious liability, which arises from an employer's breach of its own, independent duty of care. *See Kopp*, 244 Ariz. at 442 ¶ 12 ("If there is an independent ground for finding the principal liable, judgment can be entered against him." (alteration omitted) (quoting *Torres v. Kennecott Copper Corp.*, 15 Ariz. App. 272, 274 (1971), *overruled in part on other grounds by Laurence*, 255 Ariz. at 107 ¶ 49)). In *Kopp*, this Court held that plaintiffs did not waive their ability to bring a negligent hiring claim against a hospital merely because they had previously settled with the operating surgeon. *Id.* Although the plaintiffs had dismissed all vicarious liability claims against the hospital, they could still bring an action against the hospital for negligent supervision. *Id.*

¶19 In contrast, where the plaintiff claims no separate or additional damage from the employer's conduct, the employer's separate liability adds nothing to the damages sought, and any related evidence is similarly irrelevant. *See Lewis v. S. Pac. Co.*, 102 Ariz. 108, 109 (1967). In *Lewis*, a widow sued the railroad and its employees after a train struck her husband's car and killed him. *Id.* The widow sought to admit evidence that the engineer had previously been cited for violating the railroad's speed limits and that the railroad's fireman had misinterpreted a signal and was known to be incompetent. *Id.* This Court concluded the trial court did not err in refusing to admit the evidence. *Id.* In view of the railroad's respondeat superior admission, its liability could be established by showing "the defendant employees were actually negligent at the time of the accident and proximately caused the accident." *Id.* Any negligent hiring or supervision on the railroad's part was unnecessary for the widow's recovery. *See id.*

¶20 Ignoring *Lewis*, which this Court has never overturned, Roaf cites a line of court of appeals decisions that are distinguishable from this

case because they involved claims for separate, punitive damages. *See Quinonez ex rel. Quinonez v. Andersen*, 144 Ariz. 193 (App. 1984). In *Quinonez*, a semi-truck driver struck a woman's vehicle and killed her; her widower subsequently claimed the driver's employer was liable both vicariously and for negligent entrustment. *Id.* at 195. The court concluded that the negligent entrustment action was independent from the respondeat superior negligence action. *Id.* at 197 (basing its reasoning in part on *Pruitt v. Pavelin*, 141 Ariz. 195, 201–02 (App. 1984), the Restatement (Second) of Torts § 307, and the Restatement (Second) of Agency § 213 (providing that liability results because the employer has reason to believe that putting his employee in such a position will create an unreasonable risk of harm to others)). But evidence supporting direct liability under the negligent entrustment claim was "only material on the issue of aggravating circumstances affecting punitive damages," not compensatory damages. *Id.* at 198;[1] *see also Pruitt*, 141 Ariz. at 202 (App. 1984) (holding that a realty company, aware of an employee's past forgery, was liable for negligent hiring where it hired and actively helped that employee obtain a real estate license, which she then used to defraud a seller *outside* the scope of her employment).

**¶21**        In line with this reasoning, this Court has recognized that an employer can be liable for its own conduct justifying punitive damages when its employee's conduct warranted punitive damages in the underlying claim. *See Wiper v. Downtown Dev. Corp. of Tucson*, 152 Ariz. 309, 311–12 (1987). In *Wiper*, this Court held that an employer can be liable for punitive damages for its negligent hiring or supervision, but "[i]f an employee's conduct does not warrant recovery of punitive damages against himself, it can not serve as a basis for such recovery against his employer." *Id.* at 311. A punitive damages award against the employer was improper "where no punitive damages have been awarded against the employee and the employer's liability is based solely on the doctrine of respondeat superior." *Id.* at 312; *see also Laurence*, 255 Ariz. at 106 ¶ 44 ("Dismissing a tort claim against an employee because the claim lacks merit requires the

---

[1] Only federal courts have extended *Quinonez*'s holding beyond cases where the plaintiff sought punitive damages. *See, e.g.*, *Salazar v. Flores*, No. CV-16-08201-PCT-SPL, 2019 WL 1254661 (D. Ariz. Mar. 18, 2019); *Ford v. Barnas*, No. CV-17-2688-PHX-DGC, 2018 WL 5312912 (D. Ariz. Oct. 26, 2018).

court to also dismiss a claim against an employer under the doctrine of respondeat superior.").

**¶22** Because Medstar did not move to dismiss the negligent hiring claim, this case does not require us to consider the merits of the so-called *McHaffie* rule. *Compare McHaffie ex rel. McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995) ("The majority view is that once an employer has admitted *respondeat superior* liability for a driver's negligence, it is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability."), *with Ramon v. Nebo Sch. Dist.*, 493 P.3d 613, 618 ¶ 19 (Utah 2021) (holding that because negligent employment and respondeat superior claims are distinct, plaintiffs are "entitled to assert them both if there is a factual basis for doing so"). Similarly, this case does not implicate the Arizona Constitution's anti-abrogation clause because the negligent hiring claim does not affect Roaf's ability to recover damages for his injuries. *See* Ariz. Const. art. 18, § 6.

### B. Prejudice

**¶23** We next consider whether the admission of Ortiz's driving record and the violation of the company hiring policy prejudiced Medstar. We recognize that this Court "cannot substitute our view of the record for that of either the trial judge or the jury." *Petefish ex rel. Clancy v. Dawe*, 137 Ariz. 570, 577 (1983).

**¶24** When deciding whether to grant a motion for a new trial, the trial judge should consider "whether the error likely 'affect[ed] the substantial rights of the parties' such that refusing to order a new trial would be 'inconsistent with substantial justice.'" *Am. Power Prods., Inc. v. CSK Auto, Inc.*, 239 Ariz. 151, 155 ¶ 17 (2016) (alteration in original) (quoting Ariz. R. Civ. P. 61). "In other words, the moving party is not required to prove actual prejudice, but is required to demonstrate the objective likelihood of prejudice." *Id.* at 156 ¶ 17. "Such error cannot be harmless." *Id.* When reviewing a jury trial, we consider whether the error "clearly interfered with the jury's decision-making process." *Id.* ¶ 18.

**¶25** We find such error here. We note that in ruling on Medstar's motion for a new trial, the trial court determined the verdict was "clearly supported by the evidence." In its view, Medstar's argument that admission of Ortiz's driving history resulted in a jury verdict that was

"higher than it otherwise would have been" was "purely speculative." But the record—including several of Roaf's arguments—shows a likelihood of prejudice beyond speculation.

¶26    Ortiz's driving record and Medstar's hiring and retention practices were inadmissible as irrelevant to the damages question, but Roaf presented them to the jury and then argued Medstar's culpability from that evidence. Roaf argued in closing that the jury, "as the conscience of the community," should punish Medstar for being "a company [that] does wrong," notwithstanding the lack of a punitive damages claim. Roaf's counsel even minimized Ortiz's role in the accident at the expense of Medstar: "[Ortiz] made a mistake. But he worked for a company that acted badly. . . . And that's why we insist[ed] on having that [fault allocation] instruction." Because Medstar turned a "blind eye" in hiring and retaining Ortiz, Medstar "should be responsible for that harm" following the rear-end collision.

¶27    Final jury instructions noted Medstar's admission of both vicarious and direct liability. Allocation instructions and the verdict form, however, directed the jury to apportion Ortiz and Medstar's individual faults, asking jurors "to allocate fault between [Ortiz's] fault in connection with the accident and [Medstar's] fault in connection with the negligent hiring, supervision, or retention claim." The resulting 60% allocation of fault to Medstar suggests that the jury found Medstar more at fault for the accident than Ortiz, which makes little sense under the circumstances of the damages-only trial in which Medstar had accepted 100% of the responsibility. All these factors demonstrate an objective likelihood that admission of Ortiz's personnel record and driving history interfered with the jury's decision-making process and prejudiced the verdict.

### III.    CONCLUSION

¶28    Under the circumstances of this case, evidence regarding Medstar's liability for negligent hiring should not have been admitted, and Medstar suffered prejudice because of its erroneous admission. We vacate the court of appeals' memorandum decision, and we reverse and remand to the trial court for a new trial.